James S. FALCONE

v.

Russell DANTINNE, President: Joseph April, Trustee: Philip News, Business Manager, All of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers Local Lodge 802, and Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers Local Lodge 802, and International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers.

No. 43937.

United States District Court
E. D. Pennsylvania.
Aug. 2, 1968.

Joseph P. Mylott, McEwen & Mc-Ewen, Upper Darby, Pa., for plaintiff.

Richard H. Markowitz, Wilderman, Markowitz & Kirschner, Philadelphia, Pa., for defendant.

JOHN MORGAN DAVIS, District Judge.

Before the Court is an action in accordance with the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. Sec. 401 et seq., where the plaintiff seeks to permanently enjoin the defendants, all officers and representatives of Local 802, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, from depriving him from participating in union meetings, running for union office, or any other rights which he may exercise as a member in good standing of the Union.[1]

## FINDING OF FACT

1. Plaintiff is an employee of the Sun Shipbuilding and Dry Dock Company and has been a member of defendant Local Lodge 802, International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers for a number of years (N.T. p. 108; Paragraph 5 Complaint).

2. Defendant Local Lodge 802, International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers (hereinafter referred to as "Union"), is a labor organization representing the employees of Sun Shipbuilding and Dry Dock Company for purposes of collective bargaining. Defendant Russell Dantinne is the President of the Union; defendant Joseph April is a Trustee of the Union, and defendant Philip News is Executive Secretary of the Union and acts as its Business Manager (Paragraph 3 Complaint; N.T.P. 8, 18; Plaintiff's Exhibit 2).

3. Under date of January 18, 1967, charges within the Union were filed against the plaintiff by defendants Russell Dantinne and Joseph April (Plaintiff's Exhibit 2, Exhibit B).

4. These charges were filed under and pursuant to the provisions of Article XVII of the Constitution of the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, which Article provides the grounds for charges against members and established the procedures to be followed when charges are filed (Defendant's Exhibit 2).

5. The provisions of the Constitution which plaintiff was charged with prohibit:

"(e) engaging in any activity or course of conduct contrary or detrimental to the welfare or best interest of the International Brotherhood or of a subordinate body;

(k) engaging in or fomenting any acts or course of conduct which are inconsistent with the duties, obligations and fealty of the members of a trade union and which violate sound trade union principles of which consti-

---

[1] By agreement of counsel (N.T., P. 206–207), the plaintiff has withdrawn that portion of the complaint seeking pecuniary damages. In addition, counsel agreed to consider the hearing as final, i.e. as a motion for permanent injunction.

tute a breach of any existing collective bargaining agreement;

(m) threatening with violence or assaulting any union member or officer." (Defendant's Exhibit 2).

6. The charges against plaintiff alleged the violation of the above mentioned provisions of Article XVII of the aforesaid Constitution and stated that plaintiff violated such provisions:

"On January 4, 1967, by urging and encouraging our members not to report to work on that date and by harassing, denying and threatening with violence Local Lodge officers in their efforts to assure no work stoppage while contract negotiations with Sun Shipbuilding and Dry Dock Company were in process. As a result of your activity and that of others, the outcome of negotiations was seriously jeopardized and over 1100 of our members lost a day's wages." (Defendant's Exhibit 1).

7. These charges were sent to plaintiff by registered mail and he received them a day or so after January 18, 1967 (N.T.P. 103).

8. Article XVII, Section 2(b) of the Constitution provides that after formal charges are filed the Local Lodge President will set up an informal hearing between the parties and "a sincere effort will be made to resolve the matter at this point." (Defendant's Exhibit 2, Article XVII, Section 2(b).)

9. In accordance with the provisions of Article XVII, Section 2(b), an informal hearing was set for January 27, 1967. It was held in the presence of the Union's Executive Board (Plaintiff's Exhibit 2, Exhibit C), President Dantinne directed all Union officers to be present. (N.T. p. 20).

10. Prior to the informal hearing, Mr. Russell Dantinne, Mr. Joseph April, Mr. Frank Brooks, Mr. Benny Morris and Mr. Philip News discussed, with one another, the alleged misconduct of the plaintiff. (N.T. p. 62).

11. Prior to the informal hearing on January 27, 1967, Mr. Roosevelt Glass and Defendant Philip News, both of whom are Union officers, members of the Official Board and members of the Union Trial Body, discussed the plaintiff's alleged misconduct and stated that plaintiff had taken part in stopping people from going into the yard at Sun Shipbuilding and Dry Dock Company on January 4, 1967. (N.T. p. 64).

12. At the informal hearing on January 27, 1967, Mr. Vincent Masciarelli appeared with plaintiff as plaintiff's personal representative pursuant to Article XVII, Section 4(c) of the Constitution of the Union and he communicated this fact to the Official Board. (N.T. pp. 102, 120).

13. Plaintiff was advised of the informal hearing and was aware that its purpose was to try to resolve the charges against him. (N.T. p. 104).

14. At the informal hearing on January 27, 1967, Benny Morris and Joseph April, both Union officials, appeared as witnesses against the plaintiff. (N.T. p. 119).

15. Plaintiff was never informed prior to the informal hearing on January 27, 1967, that any witnesses against him would be presented at the time of the informal hearing.

16. Plaintiff made no suggestion at the informal hearing to compromise the charges against him and in fact indicated no willingness to settle the charges (N.T. pp. 104–106).

17. Since the charges were not settled at the informal hearing, a trial body was appointed by the Union's officers, excluding the two charging parties, pursuant to Article XVII, Section 3(a) of the Constitution, which provides:

"Section 3(a)—Local Lodges shall have jurisdiction to hear charges, through a trial body, involving their members or their officers, or members working or seeking work in their jurisdiction if the offense is there committed, subject to provisions of Section 3(b) of this Article. The trial body of the Local Lodge shall consist of a panel of three of the elected offi-

cers of such Lodge as decided by the elected officers. No charging or other directly involved party shall sit as a member of a trial body, and any member of a trial body may be challenged for cause and, if the trial body finds cause to exist, such member shall vacate his position and the President shall fill such vacancy by appointment. In the event such vacancy cannot be filled by a Local Lodge officer the Local Lodge shall elect from among the members of the Local Lodge to fill such vacancy." (Defendant's Exhibit 2).

18. The trial body was picked by the Union's officers, except for the two charging parties, after the informal hearing. (N.T. pp. 14, 18, 19).

19. Philip News, Executive Secretary of the Union, Roosevelt Glass, Inspector and Chief Steward of the Union, and Frank Brooks, Recording Secretary of the Union, were selected as members of the trial body.

20. At no time did plaintiff ever challenge any member of the trial body for cause pursuant to his right to do so under the Constitution.

21. By registered letter dated January 30, 1967, plaintiff was notified that a formal hearing would be held on the charges against him on February 22, 1967, at the Union's office (Plaintiff's Exhibit 2, Exhibit D; N.T. p. 110).

22. Article XVII, Section 4, of the Constitution of the Union, provided, in regard to the conduct of hearings, as follows:

"(b) At every hearing, whether conducted on the Local or International level, minutes of the proceedings shall be kept together with a summary of the evidence and of the testimony of witnesses. If a verbatim record is desired by any party to the proceedings, the union shall provide same and such party shall bear the costs of same, and other directly involved parties desiring a copy shall pay the costs of such copy.

(c) Either party shall have the right to confront and cross-examine witnesses and to be represented only by a member except one in a supervisory capacity. No non-members, other than witnesses and official reporter, if any, shall be permitted to attend the hearing. Witnesses, except when testifying, shall be excluded upon the request of an opposing party or at the discretion of the trial body. The trial body shall have the authority to limit the attendance of members if necessary to preserve order.

(d) As soon as possible, but not more than ten (10) days after the conclusion of the trial or in cases where verbatim transcript is involved, within ten (10) days after receipt of transcript, the trial body shall make a decision in writing and send a copy to the accused and other directly involved parties by registered or certified mail, with return receipt requested to last known address. If the accused is found guilty, the trial body shall establish the penalty and set it forth in its decision. Penalties should be imposed according to the nature of the offense." (Defendant's Exhibit 2).

23. Prior to the formal hearing, plaintiff made no request for a stenographer or a court reporter. (N.T. 220, 221).

24. Such a request for a court reporter was made by the plaintiff at the opening of the hearing and the hearing was delayed for several hours to permit the plaintiff to secure a reporter, which he was unable to do. (N.T. pp. 128, 226–228, 232, 233.)

25. Minutes of the formal hearing were kept by two of the members of the trial body, News and Brooks (N.T. pp. 53, 164).

26. The minutes of the hearing of the trial body state:

"Brother Falcone then inquired about a verbatim record and was told that it had been his responsibility to formally give notice of his desire for a verbatim record in sufficient time to have a

reporter present at the hearing. He replied that he had done so on Monday, February 20, 1967, through Brother Masciarelli making a request to a Trial Body member, Glass. The Trial Body replied that Falcone had not formally designated Masciarelli as his representative until now, and that in any event, Masciarelli did not formally request a verbatim record in his conversation with Glass." (Plaintiff's Exhibit 2, Exhibit E.).

27. Under date of March 14, 1967, defendant Philip News sent a copy of the minutes of the formal hearing before the Trial Body to plaintiff's attorney. (N.T. pp. 207, 208).

28. Plaintiff saw and examined the minutes of the hearing before the Trial Body for the first time on February 18, 1968, approximately a week before the hearing in this case. (N.T. pp. 234–236).

29. Neither the plaintiff nor his attorney ever complained about, or raised any question challenging the accuracy of the minutes of the formal hearing before the Trial Body. Neither plaintiff nor his attorney ever made any contention that such minutes did not accurately reflect what transpired at the formal hearing.

30. At the hearing before the trial body, the charging parties testified and also presented three witnesses. The plaintiff was given the opportunity to cross-examine all of them. (Plaintiff's Exhibit 2, Exhibit E).

31. All of the witnesses against plaintiff at the trial on February 22, 1967, were either Union officers or related to Union officers. (N.T. pp. 115, 116).

32. Two of the witnesses against plaintiff at the trial on February 22, 1967, were brothers of two of the members of the trial body. (N.T. pp. 115, 116).

33. At the hearing before the trial body, plaintiff testified and presented a witness on his behalf. (Plaintiff's Exhibit 2, Exhibit E).

34. The evidence before the trial body showed that on January 4, 1967, the date of the expiration of the Union's prior collective bargaining agreement with the Sun Shipbuilding and Dry Dock Company, plaintiff stood outside the shipyard and sought to encourage employees not to work. (Plaintiff's Exhibit 2; Exhibit C).

35. The trial body reviewed the evidence presented to it and concluded that plaintiff was guilty of the charges against him. (N.T. pp. 55, 165, 199).

36. Under date of March 2, 1967, the trial body notified the plaintiff that he had been found guilty of the charges against him (Plaintiff's Exhibit 2, Exhibit F).

37. The trial body imposed a penalty upon the plaintiff of a five year expulsion from membership in the Union. (Plaintiff's Exhibit 2, Exhibit F).

38. Under date of March 16, 1967, plaintiff's attorney filed an appeal on his behalf with the International President of the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers (Plaintiff's Exhibit 2, Exhibit G).

39. Under date of April 20, 1967, the International President advised the plaintiff that the decision of the International Executive Council was to deny his appeal but to modify the penalty to a five year suspension from membership in the Union. (Plaintiff's Exhibit 2, Exhibit H).

## DISCUSSION

The situs of the controversy was the Sun Ship and Dry Dock Co., in Chester, Pennsylvania. Since the work contract between the company and the Union was about to expire, negotiations had continued late through the evening of January 3, 1967, and into the morning of January 4th. On January 3rd, a vote was taken, wherein the membership elected to strike if an agreement was not reached by January 4th. Sometime

prior to commencement of work by the first shift, at approximately 7:00 A.M. on January 4th, the Union officers announced that a tentative agreement had been reached. Consequently, the Union ordered the first shift to go to work.

The plaintiff, however, apparently believed that anything short of a *firm* company-union agreement would be violative of the mandate of the Union membership to strike if "no agreement had been reached". While the Union officers were ordering the first shift to commence work, the plaintiff was simultaneously urging them to strike. Although the Union asserts that certain of its officers were threatened with physical violence, the plaintiff emphatically denied such conduct on his part.

On January 18, 1967, the Union instituted disciplinary proceedings against the plaintiff in accordance with the Constitution and By-Laws. Pursuant thereto an informal hearing was held on January 27, 1967, at which time the plaintiff was given the opportunity to admit culpability in exchange for the imposition of "less severe" sanctions. This was not acceptable, and the plaintiff then demanded a trial (by a union tribunal).

On February 22, 1967, the plaintiff was tried before a board consisting of Philip News the Business Agent, Roosevelt Glass, a union inspector and Frank Brooks, the Recording Secretary. The plaintiff was adjudged guilty, and expelled from the union for five years. On appeal to the International Union the sentence was changed to "five years suspension."

In this action, the plaintiff alleges that:

1. By bringing disciplinary proceedings for remarks and conduct made on January 4, 1967, the Union violated the plaintiff's right to free speech.

2. The informal hearing was unfair, since the plaintiff was not told that adverse witnesses would be presented, or that members of the official board would be present.

3. The trial conducted on February 22, 1968 was unfair, since the members of the trial body were not impartial.

4. The trial was unfair since plaintiff's request for a verbatim transcript had been ignored. In addition, all of the witnesses against the plaintiff were either Union officers or related to Union officers who were predisposed to a finding of guilt.

I.

There is little doubt that Section 101(a) (2) of the Labor-Management Reporting and Disclosure Act was designed to preserve the right of union members to voice their views and opinions on matters affecting the union and its activities.[1]

It is also clear that the Act contemplates the imposition of appropriate sanctions by a union, upon its members, for conduct which results in the interference of the unions' obligations;[2] both "contractual and legal".

The essential question, then, is whether the actions and assertions of the plaintiff Falcone were statutorily protected as an exercise of freedom of speech or assembly, or were his actions

---

1. 29 U.S.C. Sec. 411(a) (2) states, in relevant part:
 Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views * * * upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: * * *.

2. Section 101(a)(2), 29 U.S.C. Sec. 411 (a)(2) continues:
 *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

and assertions unjustified interference with the performance of the legal or contractual obligations of the Union?[3]

This precise question, however, is not presently before the Court. Section 101(a) (5) of the Act, 29 U.S.C. Sec. 411(a) (5) provides that:

> No member of any labor organization may be * * * suspended (or) expelled * * * unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

 If the intraorganizational proceedings provided the plaintiff with the *procedural* safeguards enumerated above, then this Court cannot disturb the decision which the Union reached, unless manifestly unreasonable. Smith v. General Truck Drivers, etc. Union, Local 467, 181 F.Supp. 14 (S.D.Calif. 1960); Rosen v. District Council No. 9, 198 F.Supp. 46 (S.D.N.Y.1961). The scope of judicial review properly precludes an examination of the essential *substantive* allegation, i. e. that the plaintiff's right to free speech has been abolished:

> The Court is neither authorized nor required to weigh the evidence presented to the union disciplinary body, or to substitute its judgment for that of the union body respecting the credibility of the witnesses or the weight of the evidence.

Phillips v. Teamsters, etc., 209 F.Supp. 768, 771 (D.N.J.1962). See also Null v. Carpenter District Council of Houston, 239 F.Supp. 809 (S.D.Texas, 1965).

Vars v. Int'l Brotherhood of Boilermakers, etc., 215 F.Supp. 943 (D.Conn.1963).

## II.

The attention of the Court will accordingly be devoted to whether the plaintiff received a fair hearing in accordance with Section 101(a) (5) of the Act.

### A.

It is contended that the informal hearing conducted on January 27, 1967, was unfair, since the plaintiff was not informed that adverse witnesses would be presented or that members of the official board would be present.

With regard to the former contention, we fail to see how the plaintiff was in any way harmed. The purpose of the informal hearing is to dispose of the controversy in a summary and amicable manner. According to the Section 2(b), Article XVII of the Constitution;

> If the charges are disposed of as a result of this informal hearing, the agreement * * * shall be reduced to written form. However, if the matter is not concluded on such informal basis, * * * a time for trial * * * (shall be fixed) at which such accused shall appear and defend.

 Since the informal hearing was not intended to consist of an adversary proceeding, but simply an opportunity to *negotiate* an amicable resolution, the plaintiff was not in any way prejudiced by the appearance of witnesses since he was under no obligation to rebut their testimony, or in any way respond to the assertions presented therein.

---

3. The *proviso* contained in Section 101(a) (2), and stated in footnote 2, supra, requires the union to adopt "reasonable rules" regarding the conduct of its members.

 The rules under which the disciplinary proceedings were instituted against the plaintiff, are contained in article XVII of the Constitution of the International Brotherhood, which essentially prohibit conduct contrary to the best interest of the Brotherhood (subsection e); engaging in or fomenting any acts or course of conduct which are inconsistent with the duties, obligations and fealty of the members of the union (subsection k) "and threatening with violence or assaulting any union member or officer" (subsection m).

 The plaintiff is not asserting that the constitutional provisions recited above are inconsistent or incompatible with the "reasonable rules" requirement of Section 101(a) (2). Consequently, since they do not appear unreasonable on their face (although somewhat general in scope) this aspect need not be determined.

## B.

The fact that the members of the trial board were present at the informal hearing, and presumably were predisposed to a finding of guilt, is without merit. While such procedure may be justifiably subjected to criticism, it does not render the trial unfair *per se*. Null v. Carpenters District Council of Houston, 239 F.Supp. 809 (S.D.Tex.1965); Cornelio v. Metropolitan District Council of Philadelphia, etc., 243 F.Supp. 126 (E.D.Pa.1965). In addition, the plaintiff has failed to demonstrate any actual unfairness resulting from this procedure. Similarly, the allegation that all of the witnesses against the plaintiff were either union officers, absent any additional showing, does not *per se* constitute an unfair hearing.

## C.

Finally, it is alleged that the final hearing or trial was unfair, since the plaintiff's request for a verbatim transcript was ignored. However, by his own admission, the plaintiff informed the trial body that he would obtain a reporter. Perhaps a more prudent trial body would have continued the hearing until a reporter was actually available. However, having unsuccessfully assumed the responsibility, the plaintiff cannot now assert that the trial body erred in proceeding without a reporter.

## CONCLUSIONS OF LAW.

1. This Court has jurisdiction over this action pursuant to Section 102 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 412.

2. Section 101(a) (5) of the said Act, 29 U.S.C. § 411(a) (5), provides that no member of a labor organization may be fined, suspended, expelled or otherwise disciplined, except for nonpayment of dues:

> "unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

3. In order to be entitled to relief from this Court, plaintiff must establish that he was denied one of the statutory rights set forth in Section 101(a) (5) of the Act, 29 U.S.C. § 411(a) (5). Cornelio v. Metropolitan District Council of Carpenters, 243 F.Supp. 126 (E.D.Pa. 1965), aff'd per curiam 358 F.2d 728 (3rd Cir. 1966).

4. Plaintiff was served with written and specific charges against him, such charges having been served under date of January 18, 1967.

5. Plaintiff was given a reasonable time to prepare his defense. He was notified by letter dated January 30, 1967, of a hearing to be held on February 22, 1967.

6. In determining whether plaintiff received a full and fair hearing as required by the statute, this Court is not authorized or required to weigh the evidence before the Union's trial body or to substitute its judgment for the Union's trial body. Phillips v. Teamsters Local 560, 209 F.Supp. 768 (D.N.J. 1962); Rosen v. Painters District Council 9 of New York City, 198 F.Supp. 46 (S.D.N.Y.1961); Smith v. General Truck Drivers Union, Local 467, 181 F. Supp. 14 (S.D.Calif.1960).

7. The finding of the Union's trial body that plaintiff participated in instigating a stoppage of work by members of the Union and was guilty of the charges against him is supported by the evidence presented to the Union's trial body.

8. The fact that the persons who filed the charges against plaintiff were the President and a Trustee of the Union did not deprive the plaintiff of a full and fair hearing, as required by the Act. Cornelio v. Metropolitan District Council of Carpenters, supra; Null v. Carpenters District Council of Houston, 239 F.Supp. 809 (S.D.Tex. 1965); Burke v. International Brotherhood of Boilermakers, supra.

9. The suggestion to plaintiff at the informal hearing that he accede

to a small penalty did not prejudice plaintiff's right to a fair trial, but was only an effort to resolve the situation without the necessity of a full trial.

■ 10. The fact that members of the Union's Executive Board were present at the informal hearing was not illegal or improper since the Union's officers were naturally concerned about a matter involving an illegal work stoppage which might have subjected the Union to civil liability.

■ 11. The fact that the members of the Trial Body had some knowledge of the conduct in which plaintiff engaged did not prejudice the plaintiff or deprive him of a fair trial.

■ 12. The fact that two of the witnesses against plaintiff had brothers on the trial body, and that other witnesses may have been officers of the Union, did not deprive plaintiff of a fair trial since such individuals have a right as members of the Union to participate in these proceedings. Cornelio v. Metropolitan District Council of Carpenters, supra.

■ 13. The disciplining of the plaintiff, for an outright violation of the commitments of the Union's officers and negotiating committee to the Company, to maintain work without interruption during the negotiation of a new contract and pending its ratification was merely the enforcement by the Union of reasonable rules dealing with the responsibility of each member to the Union, and was not an interference with the plaintiff's right of free speech.

14. The Union was justified in attempting to maintain the integrity of its collective bargaining agreement and of the commitments by its negotiating committee to the Sun Shipbuilding and Dry Dock Company.

15. The plaintiff received a full and fair trial of the charges against him.

16. Plaintiff has not been deprived of any statutory right since he received the protections against unfair discipline guaranteed by the statute.

ORDER

And now, this 2nd day of August 1968, the plaintiff's motions for preliminary and final adjudication is denied.

It is further ordered that having withdrawn the prayer for all other relief, the complaint is dismissed.