420 F.2d 1157
 James S. FALCONE, Appellant,
v.
Russell DANTINNE, President; Joseph April, Trustee; Philip News, Business Manager; all of the Internal Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local Lodge 802; and International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local Lodge 802.
 No. 17520.
 United States Court of Appeals Third Circuit.
 Argued April 25, 1969.
 Decided November 24, 1969.
 As Amended on Denial of Rehearing January 6, 1970.
 
 COPYRIGHT MATERIAL OMITTED Joseph P. Mylotte, McEwen & McEwen, Upper Darby, Pa., for appellant.
 Richard H. Markowitz, Wilderman, Markowitz & Kirschner, Philadelphia, Pa., for appellees.
 Before BIGGS, FREEDMAN and STAHL, Circuit Judges.
 OPINION OF THE COURT
 STAHL, Circuit Judge.
 
 
 1
 James S. Falcone brought this action below,[1] under the authority of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 401 et seq., to enjoin the imposition of disciplinary measures against him by his union, the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local Lodge 802, one of the appellees herein. Appellant Falcone was suspended from the union for a period of five years[2] for allegedly encouraging 1,100 union members not to return to work at the Sun Shipbuilding and Dry Dock Company in Chester, Pennsylvania, after the union's officials reported that they had reached a tentative (rather than a firm) accord with management on a collective bargaining agreement. Falcone justified his action on the basis that the membership had mandated a strike unless a firm agreement was reached. Falcone was also accused of speaking derogatorily of some of the union officials and physically threatening members seeking to return to work.[3]
 
 
 2
 The thrust of appellant's attack on the union's imposition of disciplinary punishment against him is that at least one of the members of the Trial Body, the finder of fact and "sentencing" organ under the union's constitution, had prejudged the case, thus denying Falcone "a full and fair hearing" as guaranteed under the statute, § 101, 29 U.S.C. § 411 (a) (5):
 
 
 3
 No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.
 
 
 4
 The three members of the Trial Body which conducted appellant's hearing were: the chairman, Philip News, Executive Secretary of the Union and its Business Manager; Roosevelt Glass, Inspector and Chief Steward of the Union; and Frank Brooks, Recording Secretary. Prior to the formal hearing by the Trial Body on February 22, 1967, the three members had attended and participated, with other union officials, in an informal proceeding, specifically provided for in the union's constitution,[4] where an unsuccessful attempt to work out the differences between the parties was made. The informal hearing was held on January 27, 1967.
 
 
 5
 In their brief and at oral argument appellees have argued that an adverse decision here may jeopardize the utility of this informal means of dispute settlement. Nothing in this opinion should be construed as disapproving of this informal type of settlement procedure. Indeed, we perceive this to be a valuable tool in the resolution of intra-union disputes. Nor do we see any inherent impropriety in having a union officer who attends and participates in the informal meeting subsequently sit as a member of the Trial Body and as a finder of fact at a formal hearing[5] provided there is no element of bias or prejudgment, as we find to be the case here.
 
 
 6
 What we find offensive, as shown below, is that at least one member of the Trial Body in this case, by his own admission, had made up his mind about Falcone's "guilt" at or prior to the informal proceeding, thus depriving appellant at a full and fair hearing, free of prejudgment, as mandated by the Act.
 
 
 7
 Philip News, chairman of the Trial Body, testified in the court below as to what transpired at the January 1967 informal hearing. In response to a question by counsel for appellant, Mr. News said:
 
 
 8
 * * * We asked Mr. Falcone to simply admit his guilt because it was obvious that it appeared by the evidence that he was guilty by all evidence possible, and that if he were to admit his guilt and save us all the necessity of a trial, of a hearing, that the penalty in all likelihood would be much lighter than possibly what it might be if we went to trial, went to hearing. Appendix (App.) 25.
 
 
 9
 From this we conclude that when he sat later as a member of the Trial Board, News did not have an open mind concerning the charges brought against appellant. He had determined that Falcone was "guilty" of the charges at least as early as the January 27, 1967, informal hearing.
 
 
 10
 Other testimony by News further supports this conclusion. On redirect examination by appellant's counsel, the following colloquy took place:
 
 
 11
 Q. Did you not tell him [Falcone] that in view of the evidence some penalty seemed appropriate?
 
 
 12
 A. Yes.
 
 
 13
 Q. And you told him that on the 27th [January 27, 1967, the date of the informal hearing]?
 
 
 14
 A. Yes.
 
 
 15
 Q. Now, did you not tell him this after concluding that he had been guilty in some measure?
 
 
 16
 A. As the evidence at that point indicated, yes.
 
 
 17
 Q. So you had made up your mind at that point?
 
 A. At that point, yes. (App. 57.)
 
 18
 Upon questioning by appellees' counsel, Mr. News said:
 
 
 19
 * * * At the informal meeting on January 27, 1967 * * * [t]hree or four of us together repeated as the meeting went on that if he were guilty of the charges he would be foolish to go on and fight. It was just that simple. (App. 198.)
 
 
 20
 Upon subsequent examination by appellant's counsel, News attempted to justify his prior statements:
 
 
 21
 Q. Mr. News, you just testified that you had not formed a final opinion as to Mr. Falcone's guilt or innocence. Had you formed any opinion?
 
 
 22
 A. Yes. Because in that very informal meeting, in that very meeting, he didn't deny his guilt.
 
 
 23
 Q. He didn't deny his guilt?
 
 
 24
 A. No.
 
 
 25
 Q. That led you to believe he was guilty?
 
 
 26
 A. What other conclusion could I have drawn?
 
 
 27
 Q. I see.
 
 
 28
 A. Because it certainly looked that way. (App. 201-202.)
 
 
 29
 We do not believe Falcone's failure to raise the issue of prejudgment in the formal union proceeding constitutes a waiver; thus, it did not preclude him from raising the issue below. The testimony demonstrating prejudgment of guilt was adduced at the trial below. Whether Falcone at the time of the formal Trial Body hearing in February, 1967, knew, or should have known, of News' prejudgment is not directly material. Even if he did, it would seem that in a formal union hearing context, Falcone's participation in the proceedings, and his failure to challenge News as a member of the Trial Board as he had a right to do, 288 F.Supp. at 723, should not be construed as a waiver of such a vital safeguard as the guaranty of an impartial tribunal. Cf. Gulickson v. Forest, 290 F.Supp. 457, 467 (E.D. N.Y.1968); Rekant v. Schochtay-Gasos Union, Local 446, 205 F.Supp. 284, 289 (E.D.Pa.1962), rev'd on other grounds, 320 F.2d 271 (3d Cir. 1963).
 
 
 30
 Rather than antagonize what he could justifiably believe were already hostile union officials, it is understandable why Falcone, even if he thought of the possibility of challenging the composition of the Trial Body, did not assert such an objection. Moreover, since an element of a full and fair hearing is that the Trial Body be impartial, the duty of disqualification because of prejudgment or bias would seem to rest, at least in part, with the members of the Trial Body.
 
 
 31
 The district court said on this crucial point:
 
 
 32
 The fact that the members of the trial board were present at the informal hearing, and presumably were predisposed to a finding of guilt, is without merit. While such procedure may be justifiably subjected to criticism, it does not render the trial unfair per se. * * * 288 F.Supp. at 727.
 
 
 33
 In support of this conclusion the court cited Null v. Carpenters District Council of Houston, 239 F.Supp. 809 (S.D.Tex. 1965), and Cornelio v. Metropolitan District Council of Philadelphia, 243 F.Supp. 126 (E.D.Pa.1965), aff'd per curiam, 358 F.2d 728 (3d Cir. 1966), cert. denied, 386 U.S. 975, 87 S.Ct. 1167, 18 L.Ed. 2d 134 (1967).
 
 
 34
 We believe, to the contrary, that these cases do not lend support to the judgment of the district court. Null is clearly distinguishable. It dealt primarily with the adequacy of the notice and written charges given to a union member and the reasonable opportunity afforded him to prepare his defense. The court said further in Null:
 
 
 35
 * * * The fact that the District Council, from whose members the Trial Committee was selected, ordered an investigation of the plaintiff's activities and the filing of charges if the investigation disclosed that the filing of charges was merited does not establish bias or impartiality on the part of any members of the Trial Committee. The plaintiff's proof does not establish any bias or lack of impartiality on the part of the members of the Trial Committee. * * * 239 F.Supp. at 815.
 
 
 36
 In the instant appeal it is not an allegation that any member of the Trial Board instigated the charges that is in issue[6] but rather the prejudgment of guilt formed at the informal hearing.
 
 
 37
 Cornelio raised the question of whether there was built-in bias in the "trial committee" conducting plaintiffs' hearing where elected union business agents, not members of the trial body, instituted the charges against the union members.
 
 
 38
 The failure of the district court and this court to find bias in Cornelio[7] is of little, if any, precedential value under the substantially different facts in this appeal where prejudgment is glaringly apparent. Cf. Martire v. Laborers' Local Union 1058, 410 F.2d 32, 37 (3d Cir.), cert. denied, 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969).
 
 
 39
 Appellant asserts also that at least one other member of the Trial Body, Roosevelt Glass, prejudged the case, App. 75-80, and that two of the five witnesses who appeared against him at the formal hearing were brothers of two of the members of the Trial Body. However, we need go no further than to find adequate evidence to support the charge that one member of the Trial Body had prejudged the case in order to conclude that the hearing violated the Act.[8]
 
 
 40
 The analysis of the due process requirements to be imposed by law in this type of hearing must take into consideration the consequences to a union member of a denial of his rights under the LMRDA. These can be serious and pervasive:
 
 
 41
 Millions of Americans are members of labor unions. The welfare of many of these Americans depends upon whether they can maintain their union membership. The member's employer might have entered into a union shop agreement with the member's union; if the member loses his membership, he is likely to lose his job, his livelihood. Moreover, many unions have initiated retirement and medical plans; expulsion from the union would result in the loss of these valuable benefits. Thus, to the typical union member the maintenance of his membership is of paramount importance. * * * Comment, Substantive and Procedural Due Process in Union Disciplinary Proceedings, 3 U.San Fran.L.Rev. 389 (1969).
 
 
 42
 See also the similar comments of Judge Higginbotham in Kelsey v. Philadelphia Local 8, International Alliance of Theatrical Stage Employees, 294 F.Supp. 1368, 1372-1373 (E.D.Pa.1968), aff'd, 419 F. 2d 491 (3d Cir. 1969); Heasley v. Operative Plasterers and Cement Finishers International Ass'n, Local No. 31, 324 Pa. 257, 188 A. 206 (1936); Annot., 21 A.L.R.2d 1397, 1404 (1952).
 
 
 43
 What was well said in the area of expulsion of students from a university may also be applicable here:
 
 
 44
 * * * [I]n the present day, expulsion from * * * [a union] or suspension for a period of time * * * may well be, and often is in fact, a more severe sanction than a monetary fine or a relatively brief confinement imposed by a court in a criminal proceeding. Soglin v. Kauffman, 295 F. Supp. 978, 988 (W.D.Wis.1968), aff'd 418 F.2d 163 (7th Cir. 1969).
 
 
 45
 In deciding a case of this kind, with the promotion of union democracy uppermost in mind, we must preserve a careful balance between the protection of the rights of individual members on the one hand, and the maintenance of strong and effective union leadership and the avoidance of undue interference in internal union affairs on the other.[9] While the United States Supreme Court has not spoken directly on the portion of the LMRDA in issue here, the Court's discussion of the purpose of the Act in a case involving the fair election provisions of Title IV is particularly instructive. In Wirtz v. Hotel, Motel & Club Employees Union, Local 6, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968), Justice Brennan speaking for the Court said:
 
 
 46
 "* * * The legislative history [of the LMRDA] shows that Congress weighed how best to legislate against revealed abuses in union elections without departing needlessly from its long-standing policy against unnecessary governmental intrusion into internal union affairs." * * * The Court of Appeals [for the Second Circuit], however, in considering the reasonableness of the bylaw, emphasized only the congressional concern not to intervene unnecessarily in internal union affairs, stating that "[i]n deciding the issue of reasonableness we must keep in mind the fact that the Act did not purport to take away from labor unions the governance of their own internal affairs and hand that governance over either to the courts or to the Secretary of Labor. The Act strictly limits official interference in the internal affairs of unions." * * * But this emphasis overlooks the fact that the congressional concern to avoid unnecessary intervention was balanced against the policy expressed in the Act to protect the public interest by assuring that union elections would be conducted in accordance with democratic principles. * * * Thus, "the freedom allowed unions to run their own elections was reserved for those elections which conform to the democratic principles written into § 401." * * * 391 U.S. at 496-497, 88 S.Ct. at 1746.
 
 
 47
 This authoritative interpretation of the intent of Congress is equally applicable to the disciplinary procedures of unions governed by § 411(a) (5) of the LMRDA, and the failure to adhere to the traditional concepts of a fair hearing by an impartial tribunal, e. g., the providing of a tribunal a member of which is biased or has prejudged the case, as here, warrants overturning the action of the union Trial Body.
 
 
 48
 What constitutes a full and fair hearing in a union disciplinary proceeding must be determined from the traditional concepts of due process of law, the common law precepts governing the judicial control of internal union affairs and the sparse case law since the adoption of the LMRDA.
 
 
 49
 In searching for a beacon to serve as a guide in the interpretation of another section of the Act, § 501, 29 U.S.C. § 501; Annot., 15 A.L.R.3d 939 (1967), Judge Clary said in Highway Truck Drivers and Helpers, Local 107 v. Cohen, 182 F.Supp. 608, 617 (E.D.Pa.), aff'd per curiam, 284 F.2d 162 (3d Cir. 1960), cert. denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961):
 
 
 50
 * * * Congress made no attempt to "codify" the law in this area. It appears evident to us that they intended the federal courts to fashion a new federal labor law in this area, in much the same way that the federal courts have fashioned a new substantive law of collective bargaining contracts under § 301(a) of the Taft-Hartley Act, 29 U.S.C.A. § 185(a). See Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972. In undertaking this task the federal courts will necessarily rely heavily upon the common law of the various states. Where that law is lacking or where it in any way conflicts with the policy expressed in our national labor laws, the latter will of course be our guide.
 
 
 51
 To the same effect, see Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886, 904 (4th Cir.), cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963). In describing the common law requisites of a fair hearing, Judge Sobeloff said in Parks:
 
 
 52
 The common law clearly requires that, to be valid, expulsion of a member or a subordinate body must be rendered after a "fair hearing." * * * The elements of such a "fair hearing" often resemble constitutional due process requirements and generally encompass full notice and a reasonable opportunity to be heard — including the right to present evidence and the right to confront and cross-examine witnesses. There is also a body of law requiring trial of an accused before an unbiased tribunal. * * * (Footnotes omitted; emphasis added.) 314 F.2d at 911-912.
 
 
 53
 See also Lewis v. American Federation of State, County and Municipal Employees, 407 F.2d 1185, 1192-1193 (3d Cir. 1969); Annot., 21 A.L.R.2d 1397 (1952).[10]
 
 
 54
 The statutory "full and fair hearing" language appears to be without ambiguity and therefore requires no in depth analysis of legislative history to determine the congressional intent.[11] An essential element of a fair hearing within the concept of due process of law is the impartiality, i. e., openmindedness, of the trial body. Cf. Lanigan v. Local No. 9, 327 F.2d 627 (7th Cir.), cert. denied, sub nom., Rees v. Local Union No. 9, etc., 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964);[12] Gulickson v. Forest, supra; Anderson v. United Brotherhood of Carpenters and Joiners, 51 CCH Lab.Cas. ¶ 19,747 (D.Minn.1965);[13] Airline Stewards and Stewardesses Ass'n, Local 550 v. Transport Workers Union, 49 CCH Lab. Cas. ¶ 18,850, p. 31,009 (N.D.Ill. 1963), rev'd on other grounds, 334 F.2d 805 (7th Cir. 1964), cert. denied, 379 U.S. 972, 85 S.Ct. 648, 13 L.Ed.2d 563 (1963); Carroll v. Associated Musicians, Local 802, 235 F.Supp. 161 (S.D.N.Y.1965);[14] Etelson and Smith, Union Discipline Under the Landrum-Griffin Act, 82 Harv. L.Rev. 727, 748 (1969); Comment, 3 U. San Fran. L.Rev., supra at 403, 417; Summers, Internal Relations Between Unions and Their Members, 18 Rutg. L.Rev. 236, 270 (1964); Aaron, The Labor-Management Reporting and Disclosure Act of 1959, 73 Harv.L.Rev. 851, 872, 874 (1960); Developments In the Law-Judicial Control of Actions of Private Associations, 76 Harv.L.Rev. 983, 1034 (1963).
 
 
 55
 Since the record demonstrates that one member of the Trial Board prejudged the case, we reverse the holding of the lower court that appellant Falcone was accorded a full and fair hearing. It should be made clear that we do not reach the merits of the decision of the union Trial Body. Lewis v. American Federation of State, County and Municipal Employees, supra; Maloney v. District No. 1, United Mine Workers of America, 308 Pa. 251, 162 A. 225, 226 (1932).[15]
 
 
 56
 The judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 For the comprehensive opinion of the district court, containing extensive findings of fact and a discussion of the law, see Falcone v. Dantinne, 288 F.Supp. 719 (E.D.Pa.1968)
 
 
 [2]
 The local union Trial Body originally imposed a penalty of a five-year expulsion from membership in the union, which was modified on appeal to the International to a five-year suspension from membership. 288 F.Supp. at 724. "* * * Suspension is a temporary cessation of rights and benefits, whereas expulsion is a disfranchisement, a severing of connections between the expelled member and the organization. * * *" Axelrod v. Stoltz, 264 F.Supp. 536, 540 (E.D.Pa. 1967), aff'd per curiam, 391 F.2d 549 (3d Cir. 1968)
 
 
 [3]
 The specific provisions of Article XVII, § 1, of the union constitution which appellant was charged with violating were as follows:
 (e) engaging in any activity or course of conduct contrary or detrimental to the welfare or best interest of the International Brotherhood or of a subordinate body;
 (k) engaging in or fomenting any acts or course of conduct which are inconsistent with the duties, obligations and fealty of the members of a trade union and which violate sound trade union principles or which constitute a breach of any existing collective bargaining agreement;
 (m) threatening with violence or assaulting any union member or officer. * * * 288 F.Supp. at 721-722.
 Appellant Falcone has persistently denied any physical threats or interference and appellees have conceded that the charge of physical violence was never proved. (Appellee's brief, p. 19.) Considering the disposition we make of this appeal, we need not decide the effect of the failure to prove one of a number of multiple charges. See Ford v. Kammerer, 287 F.Supp. 853, 857 (E.D.Pa. 1968).
 Also because of such disposition, we need not inquire whether Falcone's "offense" in urging members not to return to work may under the facts here be the subject of a union disciplinary proceedings, or whether such conduct is protected as free speech under the LMRDA. See Farowitz v. Associated Musicians of Greater New York, Local No. 802, 330 F.2d 999 (2d Cir. 1964); Kelsey v. Philadelphia Local 8, International Alliance of Theatrical Stage Employees, 294 F.Supp. 1368 (E.D.Pa.1968), aff'd, 419 F.2d 491 (3d Cir. 1969); Johnson v. Rockhold, 293 F.Supp. 1016, 1017-1018 (E.D.N.Y. 1968); Ford v. Kammerer, supra; Sawyers v. Grand Lodge, International Ass'n of Machinists, 279 F.Supp. 747, 755-756 (E.D.Mo.1967).
 
 
 [4]
 Article XVII, Section 2(b) provides:
 (b) After receiving such formal charges, the Local Lodge President or the International President, will within fourteen (14) days, set up an informal hearing between the parties directly involved and a sincere effort will be made to resolve the matter at this point. If the charges are disposed of as a result of this informal hearing, the agreement reached by the parties shall be reduced to written form, signed by the parties directly involved therein and witnesses thereto. However, if the matter is not concluded on such informal basis, the Local Lodge President or the International President, as the case may be, shall fix a time for trial which shall be not later than forty-five (45) days following receipt of such charges and shall give the accused at least fifteen (15) days notice of the time and place of a hearing on such charges at which such accused shall appear and defend. If the accused fails to appear, unless postponement has been granted for good cause, the trial shall nevertheless proceed. Similar notice shall be given the charging party and all directly involved parties.
 It should be noted that the informal hearing is required to be "between the parties directly involved." This may suggest that only the charging parties and Falcone should have been present at the informal hearing. See App. 39-41, 156-161, 193-194. Because of the disposition we make of this appeal, however, we need not decide the propriety of the presence of other elected officials at the informal hearing.
 
 
 [5]
 With respect to the composition of the Trial Body, article XVII, Section 3(a), of the union constitution expressly provides that the "trial body of the Local Lodge shall consist of a panel of three of the elected officers of such lodge as decided by the elected officers. No charging or other directly involved parties shall sit as a member of the trial body, and any member of a trial body may be challenged for cause and, if the trial body finds cause to exist, such member shall vacate his position and the President shall fill such vacancy by appointment. In the event such vacancy cannot be filled by a Local Lodge officer, the Local Lodge shall elect from among the members of the Local Lodge to fill such vacancy."
 
 
 [6]
 Actually, as indicated in note 5,supra, under the appellee union's constitution, a charging party may not sit as a member of the Trial Board.
 
 
 [7]
 See Gulickson v. Forest, 290 F.Supp. 457 (E.D.N.Y.1968), a case brought under the LMRDA, where Judge Weinstein, applying "higher judicially imposed standards to insure impartiality in union disciplinary proceedings [which] have been read regularly into union charters by New York courts," 290 F.Supp. at 465, held that a trial board composed of a slate of candidates, and their supporters, recently defeated by the plaintiff, was not an impartial tribunal.
 While none of the parties here have relied on Pennsylvania law, the state courts have protected the rights of union members against arbitrary suspension or dismissal, including the requirement of an impartial tribunal. Weiss v. Musical Mutual Protective Union, 189 Pa. 446, 42 A. 118, 120 (1899). See also, Williams v. National Organization, Masters, Mates & Pilots of America, Local No. 2, 384 Pa. 413, 120 A.2d 896 (1956); McGinley v. Milk and Ice Cream Salesmen, Drivers and Dairy Employees Local Union 205, 351 Pa. 47, 40 A.2d 16 (1944); Engle v. Pottsville Div. No. 90, B. of L. E., 66 Pa.Super. 356 (1916); Binkowski v. Highway Truck Drivers and Helpers, Local 107, 8 Pa.Dist. & Co.R.2d 254 (Phila.Co.1957); Cheetham v. Local No. 222, United Garment Workers of America, 55 Pa.Dist. & Co.R. 28 (Phila. Co.1945); Stern, Intra-Union Activities, Membership and Collective Bargaining Rights Under Pennsylvania Law, 29 Temple L.Q. 38 (1955); and note 10, infra.
 
 
 [8]
 While we do not find it necessary to deal specifically with the objectivity of the other two members of the Trial Body, we believe that if Falcone is required to go before another union tribunal, it would be inappropriate for Glass, Brooksor News to serve as members. As virtually all of the other elected officers of the local were present and participated in the informal settlement hearing, we are also of the view that none of the elected officers (except for Wolf and Jones) may properly sit as members of any future Trial Body convened to rehear Falcone's case. The president of the local, Dantinne, was not only present at the informal hearing but was also a charging party. App. 8. Vice-president Morris was present at the informal proceeding and was a witness in both the informal and formal hearings. App. 115, 119; Exh. E. Treasurer Oprouseck, along with Dantinne, Glass and Brooks, expressed the "hope" at the informal hearing that the "matter could be settled here and now * * *" with "some relatively small penalty * * *" Exh. C. Trustee April was a charging party along with Dantinne. App. 11-12. Trustee Wolf, though present, apparently took no part in the informal proceedings, App. 26, and trustee Jones was absent, App. 25; Exh. C, so that neither of them need be excluded from any future formal hearing body considering the charges against appellant.
 While under the union constitution members of the formal Trial Body are required to be elected officers of the local union, the president may appoint other members of the union if no elected officers are available. See note 5, supra.
 
 
 [9]
 Chief Judge Hastie articulated this objective in Harris v. International Longshoremen's Association, Local No. 1291, 321 F.2d 801, 805 (3d Cir. 1963)See also, Underwood v. Maloney, 152 F.Supp. 648, 660-661 (E.D.Pa.1957), modified on other grounds, 256 F.2d 334 (3d Cir.), cert. denied, 358 U.S. 864, 79 S.Ct. 93, 3 L.Ed.2d 97 (1958), for statement of a similar principle prior to the LMRDA, and Phillips v. Osborne, 403 F.2d 826, 829 (9th Cir. 1968); Nelson v. Johnson, 212 FSupp. 233, 257-270 (D.Minn.1962), aff'd, 325 F.2d 646 (8th Cir. 1963); Gleason v. Chain Service Restaurant, 300 F.Supp. 1241, 1250 (S.D.N.Y.1969); Note, Rights of Union Members: The Developing Law Under the LMRDA, 48 Va.L.Rev. 78, 81 (1962); Cox, The Role of Law in Preserving Union Democracy, 72 Harv.L.Rev. 609 (1959).
 
 
 [10]
 It is interesting to note that after vesting jurisdiction in the federal courts to vindicate the Bill of Rights subchapter of the LMRDA, § 102, 29 U.S.C. § 412, Congress added a sort of "saving-to-suitors" clause, § 103, preserving existing remedies:
 Nothing contained in this subchapter shall limit the rights and remedies of any member of a labor organization under any State or Federal law or before any court or other tribunals or under the constitution and bylaws of any labor organization, 29 U.S.C. § 413. In Rekant v. Schochtay-Gasos Union,
 Local 466, 205 F.Supp. 284, 292 (E.D. Pa.1962), rev'd on other grounds, 320 F.2d 271 (3d Cir. 1963), Judge Freedman said:
 * * * § 103 clearly is intended to preserve rights or remedies theretofore inhering in a union member. This would make it clear that the rights and remedies provided by the Act are in addition to any which may theretofore have existed in favor of a union member, whether before a state or federal court or an administrative agency. By providing that theretofore existing rights and remedies were to be preserved Congress made the new statutory remedies cumulative in such circumstances. * * *
 This section lends weight to the congressional intent to afford union members a full arsenal of rights and remedies, those passed on from existing state, federal and "common law" sources and those developed in the judicial crucible of LMRDA litigation. See also Duncan v. Peninsula Shipbuilders Ass'n, 394 F.2d 237, 240 (4th Cir. 1968); Tirino v. Local 164, Bartenders and Hotel and Restaurant Employees Union, 282 F.Supp. 809, 813 (E.D.N.Y.1968); Thomas v. Penn Supply and Metal Corp., 35 F.R.D. 17, 19 (E.D.Pa.1964); Summers, The Law of Union Discipline: What the Courts Do In Fact, 70 Yale L.J. 175, 200, 204 (1960).
 
 
 [11]
 There is little legislative history on the meaning of the term "a full and fair hearing." Its intent may possibly be gleaned, however, from the minority report to the original Senate version of the bill, which stated that among the "minimum standards of union democracy," as proclaimed by the American Civil Liberties Union, was:
 * * *
 (6) Due process within the union guaranteeing all members the right to be protected through fair and impartial hearings and before unbiased and independent tribunals with respect to disciplinary proceedings against them. (Emphasis added.) (S.Rep.No.187, 86th Cong., 1st Sess. 2 U.S.C.Code Cong. & Adm.News, pp. 2318, 2374-2375 (1959).)
 The substance of this minority report eventually became the basis for the Bill of Rights section added to the LMRDA, 29 U.S.C. § 411, by an amendment initiated by Senator McClellan. See discussion of this aspect of the legislative history of the Act by Judge McLaughlin in Gartner v. Soloner, 384 F.2d 348, 349 (3d Cir. 1967), cert. denied, 390 U.S. 1040, 88 S.Ct. 1633, 20 L.Ed.2d 302 (1968); Aaron, The Labor-Management Reporting and Disclosure Act of 1959, 73 Harv.L. Rev. 851 (1960); Sherman, The Individual Member and the Union: The Bill of Rights Title in the Labor-Management Reporting and Disclosure Act of 1959, 54 Nw.U.L.Rev. 803, 804 (1960).
 
 
 [12]
 The court of appeals referred to the district court's holding that a full hearing had not been granted because of an "inherent defect" in the union constitution which allowed the president, who was allegedly interested in the outcome, to appoint members of the trial board. 327 F.2d at 628. The lower court decision was reversed on the ground of mootness because the union claimants had been restored to their prior membership status
 
 
 [13]
 The district court said:
 The Court is fully aware that in any schism in a Union organization, as well as within social, business, and political groups, and where there are proceedings instituted to oust a member, personal antagonism may run strong and bitter and poisonous slander may run rife. And often members of a Committee are not an independent tribunal entirely divorced from the effect of the personal animosities which exist. But the Court cannot find on its record that the petitioner has sustained his contention that these Committee members connived with any members of the Local Union to accord the petitioner a mere pretense of a trial, with preconceived views as to the ultimate result of the proceeding. * * * (Emphasis added.) 51 CCH Lab.Cas. at p. 33,866.
 
 
 [14]
 
 * * * Undoubtedly, the term "full and fair hearing" requires at its minimum an unbiased and disinterested tribunal. * * * 235 F.Supp. at 171.
 In Christensen, Union Discipline Under Federal Law: Institutional Dilemmas In An Industrial Democracy, 43 N.Y.U.L. Rev. 226, 247, 248 (1968), the author said:
 The delineation of what, in fact, are the constituents of a "full and fair hearing" will require time and the milling process of litigation, * * *
 * * * * *
 There is one area, however, in which both the necessity and the requisite basis for the establishment of an overall rule would seem to be clear.
 This particular issue — the impartiality of the union tribunal which renders judgment — is plainly basic to the concept of a "fair" hearing. * * *
 
 
 [15]
 As Judge Wortendyke said in Phillips v. Teamsters Local 560, 209 F.Supp. 768, 771 (D.N.J.1962),
 In determining whether the plaintiffs in the present case were afforded a "fair hearing" the Court is neither authorized nor required to weigh the evidence presented to the union disciplinary body, or to substitute its judgment for that of the union body respecting the credibility of the witnesses or the weight of the evidence. 209 F. Supp. at 771.
 
 
 
 57
 BIGGS, Circuit Judge (concurring).
 
 
 58
 I concur in much of my Brother Stahl's opinion and in the result he has reached. I also concur in the views expressed in the opinion of my Brother Freedman. Nonetheless I deem it desirable to state the following.
 
 
 59
 Article XVII, Section 2(b) of the Constitution of the International, set out in note 4 of my Brother Stahl's opinion, states that after receiving formal charges "the Local Lodge President or the International President will, within fourteen (14) days, set up an informal hearing between the parties directly involved * * *" (emphasis added). I think that a correct interpretation of this phrase means that a meeting shall be arranged between the charging party or parties and the person or persons accused of improper conduct. The charging parties were the President Dantinne of the Local Union, and April, one of the Union's trustees and hence a union official. Other union officials should not have been present at the informal hearing.
 
 
 60
 A complete roster of union officers, including trustees, cannot be culled with complete accuracy from the record but if the statements therein be taken at their face value it would appear that the union officers numbered nine. Section 3(a) of Article XVII provides that "The trial body of the Local Lodge shall consist of a panel of three of the elected officers of such Lodge as decided by the elected officers. No charging or other directly involved party shall sit as a member of a trial body, and any member of a trial body may be challenged for cause and, if the trial body finds cause to exist, such member shall vacate his position and the President shall fill such vacancy by appointment. In the event such vacancy cannot be filled by a Local Lodge officer the Local Lodge shall elect from among the members of the Local Lodge to fill such vacancy."
 
 The following appears from the record:
 
 61
 President Dantinne was present at the informal meeting and was a charging party.
 
 
 62
 Vice-President Morris was present at the informal meeting and was a witness before the Trial Body.
 
 
 63
 Executive Secretary News stated at the informal hearing that Falcone's conduct could not be tolerated.
 
 
 64
 Inspector Glass, Recording Secretary Brooks and Treasurer Oprouseck said "they hoped" that the matter could be settled "here and now" with "some relatively small penalty".
 
 
 65
 Trustees are officers of the union. Of the three trustees, April, Wolf and Jones, April was a charging party along with Dantinne.
 
 
 66
 Jones was absent from the informal hearing.
 
 
 67
 Wolf apparently took no part in the proceedings of the informal meeting.
 
 
 68
 In view of the foregoing how then can a new Trial Body be constituted? It is my view that President Dantinne should not be permitted to make any selection for it is clear that he has shown prejudgment of Falcone and this prejudgment must be presumed to disqualify him to select any member of the Trial Body. Of the union officers named in the preceding paragraphs only two, Wolf and Jones, can be permitted to select the three members of the new Trial Body but if they should do so they should not be permitted to choose themselves. The selecting power should be separated from the Trial Body. Even if they were permitted to choose themselves the Trial Body would be one member short. It follows, therefore, in accordance with Article XVII, Section 3(a), that the Local Lodge should elect from the members of the Local Lodge the members of the new Trial Body.
 
 
 69
 My final conclusion, like that of the majority, is that there must be a new trial before a new Trial Body but I conclude that its members should be selected as indicated in this opinion.
 
 
 70
 FREEDMAN, Circuit Judge (concurring).
 
 
 71
 I concur in the result reached in Judge Stahl's opinion because it agrees that none of those who participated in the informal hearing may sit as members of the Trial Body. But I disagree with the statement that there is no "inherent impropriety" in a union officer sitting as a member of the Trial Body after he has participated in the informal hearing. In my view, it does not matter that "no element of bias or prejudgment" is specifically proven. The circumstances themselves create the inherent impropriety.
 
 
 72
 Accordingly, I join in the conclusion but disagree with the view which would require of an aggrieved party concrete proof of bias or prejudgment, because I think there is inherent in any participation in the informal hearing a disqualification against acting as a member of the Trial Body.
 
 
 73
 ORDER OF THE COURT.
 
 
 74
 PER CURIAM.
 
 
 75
 It is hereby ordered That the opinion of this court, dated November 24, 1969, be and it is hereby amended and supplemented as follows:
 
 
 76
 ON PETITION FOR REHEARING.
 
 
 77
 Appellant has renewed the request he made below for attorney's fees. The district court's opinion would indicate the request had been dropped. 288 F.Supp. 719, at 728. Appellant asserts otherwise. We believe this matter should be disposed of by the district court on remand of the case. See Gartner v. Soloner, 384 F.2d 348 (3d Cir. 1967), cert. denied, 390 U.S. 1040, 88 S.Ct. 1633, 20 L.Ed.2d 302 (1968). Accordingly, petition for rehearing is denied.