998 So.2d 161 (2008)
Luther D. MACFADDEN, April E. MacFadden and the Estate of the Late Robin C. MacFadden, Individually and as the Legal Heirs of Joy MacFadden
v.
OCHSNER CLINIC FOUNDATION (Formerly Ochsner Clinic and Alton Ochsner Foundation Hospital).
No. 08-CA-91.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 2008.
*162 April MacFadden, Ocean Springs, Mississippi, In Proper Person for Plaintiff/Appellant.
Don S. McKinney, John L. Fontenot, Jr., Shelly F. Spansel, Charles F. Gay, Jr., Adams and Reese L.L.P., New Orleans, Louisiana, For Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS, and FREDERICKA HOMBERG WICKER.
MARION F. EDWARDS, Judge.
The judgment on appeal stems from a medical malpractice case in which the plaintiffs, Luther D. MacFadden, April E. MacFadden, and the Estate of Robin MacFadden, allege that Joy MacFadden ("Mrs.MacFadden") died in Ochsner Clinic Foundation ("Ochsner") on October 27, 1999, as the result of inadequate and inattentive nursing care while recovering from heart surgery. Made defendant was Ochsner. In 2005, Luther MacFadden moved for a voluntary dismissal as to his claims. In November 2006, Ochsner filed a Motion for Summary Judgment relative to the remaining claims on the grounds that the MacFaddens could not offer sworn expert testimony to meet their burden of proof. The motion urged that the Medical Review Panel found no breach in the applicable standard of care and that despite six years since the death occurred, the MacFaddens had produced no sworn expert testimony to establish a breach of care. Following a hearing, the court granted the motion. April MacFadden appeals.
The petition alleged that Mrs. MacFadden underwent coronary artery bypass graft and mitral valve replacement at Ochsner in August of 1999. Secondary complications included pneumonia and a staph infection, which necessitated a tracheostomy with prolonged mechanical ventilatory assistance. Mrs. MacFadden recovered to some degree and remained in an intensive care unit ("ICU") at the hospital as her respiratory status improved. According to the petition, Tina Noel, a nurse who was responsible for her care, left the ICU, and, when she returned, she found Mrs. MacFadden with the trach tube pulled out. Mrs. MacFadden was severely cyanotic without a pulse or respiration. CPR and other protocol were initiated, and Mrs. MacFadden regained consciousness. *163 She was later transferred to Biloxi Specialty Hospital where she ultimately died on October 27, 1999, allegedly as a result of the hypoxic insult at Ochsner.
During the proceedings, Ochsner made several discovery requests for the medical records of all parties, including those of Biloxi Specialty Hospital and Mrs. MacFadden's treating physician at that facility. The MacFaddens' Answers to Interrogatories, filed in May 2003, are contained in the record. There they stated that Dr. Scott Olsen, a cardiologist, and Dr. Mahmoud Zayed, the treating physician at Biloxi Hospital, would testify that the actions complained of were a breach of the requisite standard of care. However, the qualifications and areas expertise of the physicians, as well as the facts upon which those experts would testify "beyond what is reflected in the medical records," were "unknown." In the answers, the MacFaddens could not give a summary of any opinion sought to be offered.
Discovery continued to be an issue between the parties. Ultimately, in 2006, Ochsner filed its Motion for Summary Judgment. In opposition, the MacFaddens, appearing in proper person, urged that an expert was available for deposition and "was already on recorder tape with his statement," and, further, that a layman could determine causation. Neither the name of the expert, the statement, the tape, nor the substance of the opinion, was attached. However, two documents purporting to be affidavits were attached, one from a registered nurse and one from a registered respiratory therapist. Both documents originated in Mississippi, the domicile of the MacFaddens. In a supplemental opposition, the MacFaddens urged that Ochsner failed to respond to discovery. The record reveals that Ochsner did make its responses prior to the hearing, in January 2007. A few days before the hearing, which was scheduled for March 2, 2008, the MacFaddens obtained legal counsel, and a Motion to Continue was granted. On the night before the April 27 hearing, the MacFaddens' counsel faxed a response to the court but did not file it into the record. Pursuant to the local rules of court, the trial court refused to allow counsel to argue the motion.
After listening to argument of Ochsner's counsel, the court granted summary judgment. In written Reasons for Judgment, the trial court found that the case required the presentation of expert testimony. Ochsner had presented the expert opinion of the Medical Review Panel, which stated that "a thorough review of the chart does not indicate that the hospital and/or its employees failed to meet the applicable standard of care as charged in the complaint." In response, the MacFaddens had produced the "affidavits," which the court found to be insufficient. The court found them to be facially suspicious, as the notary signatures appeared on a blanket form on separate pages from the affiant's signatures, "neither of which contain a complete date, and one of which is dated differently from the signature it allegedly notarizes." It was further determined that, even if in proper form, they were insufficient to establish a breach of the standard of care or that such breach caused Mrs. MacFadden's death.
In determining whether summary judgment is appropriate, appellate courts review the evidence de novo.[1] This standard of review requires the appellate court to look at "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" in *164 making the determination that "there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966(B).[2]
According to LSA-C.C.P. art. 966(C), the burden of proof is on the mover to make a prima facie showing that a Motion for Summary Judgment should be granted. This burden does not require the movant to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. After the movant has met this burden, it shifts to the adverse party to present evidence to the court demonstrating that there remains a genuine issue of material fact. There is no genuine issue of material fact if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial.[3]
When medical personnel commit an obviously careless act, a lay person can infer negligence from the facts.[4] We agree with the trial judge on the record before us that negligence cannot be inferred in the present case, which involves complex medical and factual issues. Thus, in order to establish the standard of care for Ochsner in this case, and the alleged breach of that standard of care, the MacFaddens must put forward expert medical testimony.[5]
In support of its motion, Ochsner attached a copy of the unanimous opinion of the Medical Review Panel finding there was no negligence. In a Motion for Summary Judgment, such as this, the general rule is that once the Medical Review Panel opinion is submitted stating that the defendant physician did not breach the standard of care, the burden shifts to plaintiff to show that they have sufficient proof to carry their burden of proof at trial.[6]
In opposition to the motion, the MacFaddens submitted two documents characterized as affidavits. We agree with the trial court that the "affidavits" are, at best, suspicious. The document from respiratory therapist Shawn Cauley is clearly a letter written to Ms. MacFadden by Cauley in Georgia; the notary is from Mississippi and her signature appears on a different page, is dated on a different day, and in no way identifies the notary's subscription with the document it purports to notarize. The paper from Lori Smith, a registered nurse, is undated, and, as in the first document, the notary's signature appears on a completely separate page, which does not in any manner identify or incorporate the document it professes to notarize. The letters and/or papers are not sworn affidavits, nor are they attached to such, and the addition of the notarial subscriptions cannot, in the present case, convert these documents to admissible evidence. Such an unsworn and unverified document is insufficient and shall have no evidentiary value on a motion for summary judgment.[7]
*165 Because the MacFaddens failed to produce factual support sufficient to establish that they will be able to satisfy their evidentiary burden of proof at trial, the trial judge properly granted the Motion for Summary Judgment. For the foregoing reasons, we affirm.
AFFIRMED.
NOTES
[1] Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183.
[2] Marigny v. Allstate Ins. Co., 95-0952 (La. App. 4 Cir. 1/31/96), 667 So.2d 1229, writ denied, 96-0693 (La.4/26/96), 672 So.2d 910.
[3] Chivleatto v. Sportsman's Cove, Inc., 05-136 (La.App. 5 Cir. 6/28/05), 907 So.2d 815.
[4] See, Garrison v. Tanenbaum, 02-1181 (La. App. 5 Cir. 4/8/03),846 So.2d 40.
[5] Id.
[6] Nugent v. On-Call Nursing Agency and Associates of New Orleans, Inc., 07-1022 (La.App. 5 Cir. 3/25/08), 983 So.2d 128. See also, Herman v. St. Paul Ins. Co. XXXX-XXXX (La. App. 4 Cir. 12/13/06), 947 So.2d 785.
[7] Premier Restaurants, Inc. v. Kenner Plaza Shopping Center, L.L.C., 99-1310, 99-1311 (La.App. 5 Cir. 8/29/00), 767 So.2d 927.