JUDE G. GRAVOIS, Judge.
12Pefendant, Dominick Paternostro, appeals a judgment by the First Parish Court of Jefferson Parish, granting summary judgment in favor of plaintiff, International Association of Heat and Frost Insulators and Allied Workers Local Union No. 53 (“the Union”). For the reasons that follow, we reverse the trial court’s grant of summary judgment in favor of the Union, vacate the award of attorney’s fees to the Union, and remand the matter to the trial court for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY

Defendant became a member of the Union in 1979. In the late 1980’s, defendant began working for Eagle Insulation (“Ea *286 gle”), a “union company.”[1] In the mid-1990’s, Eagle was awarded a maintenance contract for the ExxonMobil refinery in Chalmette, Louisiana. And, in 1998, defendant was promoted to Eagle’s superintendent at this refinery. As a consequence of taking this managerial position, defendant “withdrew” from the Union.
^Approximately twelve years later in 2010, when Eagle’s maintenance contract with ExxonMobil was nearing its expiration, ExxonMobil notified Eagle that it would not be allowed to bid on the new contract. ExxonMobil later awarded the maintenance contract to The Brock Group, a “non-union company.” Around this time, defendant was offered and accepted a supervisory position with Brock, to commence on September 7, 2010. Eagle’s last day at ExxonMobil was September 3, 2010.
Around the time Eagle learned that its contract with ExxonMobil would not be renewed, Juan Perez, an Eagle employee at ExxonMobil under defendant, testified that defendant offered to help him in locating a job and told him that if he wanted to stay at ExxonMobil, he would have to work for Brock. According to Mr. Perez, defendant encouraged him to work for Brock. Fredal Riecke, another Eagle employee, also testified that defendant approached him about remaining at Exxon-Mobil.[2]
In a letter dated August 31, 2010, Leo Damaris, the Union’s business manager, informed defendant that charges were being filed against him by the Union “for violation of the International Association of Heat and Frost Insulators and Allied Workers [sic] Constitution and Bylaws under Article XXIV by accepting employment with Brock Group at the Exxon/Mobile [sic] refinery in Chalmette Louisiana, and by actively recruiting fellow members of [L]ocal # 53 to leave employment with a Local # 53 signatory and seek employment with the non-signatory Brock Group.” This letter delineated six provisions (listed infra) of the Union’s Constitution and Bylaws (“the Constitution”) that defendant’s conduct was alleged to have violated.
^Defendant responded to Mr. Damaris in a letter dated September 7, 2010, stating:
Approximately 10 years ago when I took a management position for Eagle Insula-tions, I never knew I was a member of Asbestos Workers [L]ocal # 53 union. At Eagle Insulations and at Brock I have been in a management position so I could not be a union member and the union has no jurisdiction over me. If you do not have a copy of my resignation, just to make it clear, I am not a member of the Asbestos Workers Local 53 union.
Mr. Damaris responded to defendant in a letter dated September 21, 2010, informing him that a hearing on the charges had been set for October 10, 2010. Defendant responded in an undated letter, informing the Union that he would not attend the hearing since, as a non-member, the Union did not have jurisdiction over him. Then, in an October 11, 2010 letter, defendant was informed that his hearing had been rescheduled for November 12, 2010. The hearing was held that day, defendant did not attend, and in his absence, the Union’s executive board unanimously found him *287 “guilty” on all six counts. Pursuant to the Constitution, the president of Local 53, James Pratt, presided as judge at the hearing, but did not participate in the determination of guilt or innocence. After the hearing, Mr. Pratt, as judge, determined that defendant had caused $7,500.00 in damages to the Union, based upon the dues lost from five individuals who defendant allegedly successfully recruited for employment with a non-union company, as well as previously paid expenses for the training of those individuals. As a result, defendant was fined $7,500.00 by the Union.
Defendant did not pay this fine, and on January 14, 2011, the Union instituted this breach of contract action against him to recover the fine. Defendant responded by filing an unfair labor practice charge against the Union, which he subsequently withdrew. Thereafter, the Union and defendant filed cross motions |sfor summary judgment. Following a hearing on the parties’ motions, the trial court granted the Union’s motion for summary judgment, ruling as follows:
I tell you what, Pm going to grant the [Ujnion’s Motion for Summary Judgment. I find by him not showing up at the hearing, he acquiesced to everything that they did.
He was paying what you call withdrawal dues. He was paying them something. He was paying them something every year, so he was paying the [Ujnion something.
The court ordered defendant to pay the fine of $7,500.00 and granted the Union’s request for attorney’s fees, to be determined at a later date. At a hearing held on October 15, 2013, the trial court awarded attorney’s fees to the Union in the stipulated amount of $12,500.00.

LAW AND ANALYSIS

By this appeal, defendant seeks review of the trial court’s granting the Union’s motion for summary judgment in its breach of contract action. A summary judgment is appropriate when there remains no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. Zeringue v. O’Brien Transp., Inc., 05-760 (La.App. 5 Cir. 4/11/06), 931 So.2d 377, 379, writ denied, 06-1107 (La.9/1/06), 936 So.2d 205. Summary judgments are favored in the law and the rules should be liberally applied. Id. The summary judgment procedure shall be construed to accomplish the ends of just, speedy, and inexpensive determination of allowable actions. Id.
Appellate courts review a judgment granting a motion for summary judgment on a de novo basis. Gutierrez v. State Farm Fire & Cas. Ins. Co., 13-341 (La.App. 5 Cir. 10/30/13), 128 So.3d 509, 511. Thus, this Court uses the same criteria as the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Id.
| fiProcedurally, the court’s first task on a motion for summary judgment is determining whether the moving party’s supporting documents — pleadings, depositions, answers to interrogatories, admissions and affidavits — are sufficient to resolve all material factual issues. Murphy v. L & L Marine Transp., Inc., 97-33 (La.App. 5 Cir. 5/28/97), 695 So.2d 1045, 1047 (citing LSA-C.C.P. Art. 966(B)). To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact. Id. In making this determination, *288 the mover’s supporting documents must be closely scrutinized and the non-mover’s indulgently treated. Id. Since the moving party bears the burden of proving the lack of a material issue of fact, inferences to be drawn from the underlying facts before the court must be viewed in light most favorable to the non-moving party. Id.
If the court determines that the moving party has met this onerous burden, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Murphy, supra. Louisiana Code of Civil Procedure article 967 outlines the non-moving party’s burden of production as follows:
When a motion for summary judgment is made and supported ..., an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
Summary judgment is appropriate when all the relevant facts are marshalled before the court, the marshalled facts are undisputed, and the only issue is the ultimate conclusion to be drawn from those facts. Id.
With these precepts in mind, we now turn to the case at hand.
17This Court has recognized that unions are not prohibited from fining their members for offenses committed while they are members, if the member has been afforded due process and the fines are reasonable. Int’l Bhd. of Elec. Workers Local Union v. Jouandot, 05-269 (La.App. 5 Cir. 1/17/06), 921 So.2d 1054, 1057 (citing 29 U.S.C. § 411(a)(5)).[3] Therefore, defendant’s adjudication and fine were proper if the following factors were appropriately satisfied: (1) defendant, while a member of the union, violated the Constitution; (2) he was afforded due process; and (3) the fine is reasonable.
Because we conclude infra that genuine issues of material fact remain with respect to whether defendant was afforded due process (the second factor), and the reasonableness of the fine imposed (the third factor), due to the limited nature of the record before us and in order to permit the trial court to conduct a full adjudication on the merits of all issues involved in this matter, we decline to make a determination at this stage of the proceeding as to whether genuine issues of material fact remain with respect to any of the other factors to be considered and whether the Union is entitled to judgment as a matter of law. We nonetheless include an analysis of each factor as part of our comprehensive review of this matter.
Factor 1 — Violation of Constitution by Union Member

Union Membership

Defendant argues that he was not a member of the Union at the time of the alleged violations because his membership ceased in 1998 when he was promoted to a managerial position, i.e., superintendent, with Eagle. The Union, by contrast, | Sargues that at the time of the alleged violations, defendant was a member on “withdrawal status” and so was still sub *289 ject to charges and trial under the Constitution.
Whether defendant was a union member at the time of the alleged violations is governed by the Union’s Constitution. Article XVI, Sec. 2 of the Constitution provides that union members “who become employers, superintendents, estimators, salesmen, insulation inspectors, employers’ representatives or agents in the trade” are entitled to “withdrawal cards.” While Article XVI, Sec. 2 prohibits members with withdrawal cards from voting or attending local union meetings, Article XXIV, Sec. 2 provides that “[a]ny member, including those on withdrawal card, shall be subject to charges and trial.”- Indeed, the Union’s business manager, Mr. Damaris, testified at his deposition that “[t]he [Constitution and bylaws applies to all members regardless of your status, whether you be active, on withdrawal, or retired. [As] [l]ong as you’re a member of the [UJnion, the [Constitution and bylaws applies [sic] to everyone.”
To maintain withdrawal status, Article XVI, Sec. 8 mandates that “[a] fee of fifty dollars ($50) shall be charged for the issuance and each renewal of a withdrawal card.... Withdrawal cards must be renewed not later than every twelve (12) months after date of issuance by the holders thereof....”
The record reflects that at the time of defendant’s promotion to superintendent with Eagle in 1998, he commenced paying his annual withdrawal renewal fees from that time until he left to work for Brock in 2010.[4]
On remand, the trial court will be required to determine whether defendant was in fact a member of the Union at the time he is alleged to have violated the Constitution.
| aViolation of Union Constitution
Although the Union did not submit argument regarding the merits of defendant’s convictions in its motion for summary judgment, defendant did, arguing there was no evidence to support his convictions. At the motion hearing, the trial court did not consider the merits of defendant’s convictions. Thus, on appeal, defendant argues that the trial court erred in deferring to the executive board’s factual findings and determination of guilt at the disciplinary hearing. He requests that this Court consider the merits of his convictions. In support of this position, he cites Jouandot, supra, and Int’l Bhd. of Elec. Workers v. Bunting, 97-1052 (La.App. 3 Cir. 2/11/98), 707 So.2d 132, in which this Court and the Third Circuit, respectively, considered the merits of the charges against those defendants. We find these cases to be distinguishable from the instant case: trials on the merits were conducted in both Jouan-dot and Bunting, whereas, in the instant case, the matter was resolved without a trial on the merits and the trial court did not consider the merits of the charges.
In a case with a similar procedural posture to that here, the United States Third Circuit Court of Appeals declined to consider the merits of the charges against a union member. In Goodman v. Laborers’ Int’l Union of N. Am., 742 F.2d 780, 782 (3d Cir.1984), the plaintiff, a union member, had been found guilty at an internal union hearing of union violations and was barred from holding any elected union office for five years. After a series of internal hearings and appeals, he filed an action for damages and injunctive relief pursuant *290 to 29 U.S.C. § 412,[5] in which he alleged that he had been denied a “full and fair hearing” in violation of 29 |inU.S.C. § 411(a)(5). Goodman, 742 F.2d at 781-82. Upon cross motions for summary judgment, the district court granted the union’s motion and dismissed the plaintiffs complaint. Id., 742 F.2d at 782. On appeal, the plaintiff sought review of the court’s conclusion that he had received a full and fair hearing. Id.
The federal appellate court declined to consider the substance of the charges against the plaintiff in light of the Congressional policy expressed in the Labor-Management Reporting and Disclosure Act (29 U.S.C. § 401, et seq.) that courts should respect the autonomy of unions in determining punishable offenses and in disciplining their members. Goodman, 742 F.2d at 783 (citing Int’l Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 244, 91 S.Ct. 609, 616, 28 L.Ed.2d 10 (1971)); see also Hinchman v. Local Union No. 130 Int’l Bhd. of Elec. Workers, 299 So.2d 818, 824 (La.App. 4 Cir.1974), writ denied, 302 So.2d 618 (La.1974), cert. denied, 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975) (“The jurisprudence interpreting the Labor Management Reporting <& Disclosure Act (LMRDA) has declared that the interpretation of union rules and by-laws to determine whether particular conduct of a member may result in disciplinary action should be left to the union itself, and their interpretation is not proper for judicial scrutiny.”). Instead, the court focused its inquiry into the fairness of the disciplinary proceedings, considering whether the plaintiff had been afforded the procedures required by 29 U.S.C. § 411(a)(5). Goodman, 742 F.2d at 783. The court ultimately reversed the district court’s granting of summary judgment, finding there was a genuine issue of material fact as to whether the defendant had been afforded a “full and fair hearing.” Id. at 785.
Similarly in the instant ease, the trial court apparently did not consider the merits of the charges or the fairness of the hearing, but rather apparently granted the Union’s motion for summary judgment simply because “by [defendant] not [^showing up at the hearing, he acquiesced to everything that they did.” In keeping with the recognized policy that courts should respect the autonomy of unions in determining punishable offenses and in disciplining their members, we decline to address the merits of defendant’s convictions, but instead consider the fairness of the proceedings against him.
Factor 2 — Due Process
Pursuant to 29 U.S.C. § 411(a)(5), no member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; and (C) afforded a full and fair hearing.

Written Specific Charges

In an August 31, 2010 letter, defendant was informed of the charges against him. The letter declared that charges were be *291 ing filed against defendant “for violation of the International Association of Heat and Frost Insulators and Allied Workers [sic] Constitution and Bylaws under Article XXIV by accepting employment with Brock Group at the Exxon/Mobile [sic] refinery in Chalmette Louisiana, and by actively recruiting fellow members of [L]o-cal # 58 to leave employment with a Local # 53 signatory and seek employment with the non-signatory Brock Group.” The letter enumerated the following six provisions of Article XXIV, Section 1 of the Constitution that defendant was alleged to have violated, to-wit:
(a) Violation of any provision of the Constitution and Bylaws of the International Association, and the rules thereunder, or of the bylaws, trade agreements or rules of a local union.
[[Image here]]
|12(d) Engaging in activities designed to bring about secession or withdrawal from the International Association of any member or group of members of a local union.
(e) Wronging a member of the International Association by any acts or acts (other than the expression of views or opinions) causing him physical economic harm.
[[Image here]]
(g) Working for, or on behalf of, any employer, employer-supported organization or other union or organization, or the representative of any of the foregoing, whose position is adverse or detrimental to the International Association.
[[Image here]]
(i) Making known the business of the International Association or any of its local unions to any employer, employer-supported organization, or other union or organizations, or to the representatives of any of the foregoing.
[[Image here]]
(n) Engaging in any act or acts which are contrary to the member’s responsibility toward the International Association or any of its local unions as an institution, or which interfere with the performance by the International Association or a local union of its legal or contractual obligations.
After notifying defendant of the allegations against him, in accordance with the Constitution, a September 21, 2010 letter informed defendant that his hearing had been set for October 10, 2010. The certified mail receipt indicates that defendant received this letter on September 24, 2010. Included in this letter was a recitation of Article XXV, Section 2, which provides in pertinent part: “If the accused fails to appear at the scheduled time and place, or otherwise attempts to evade trial, the trial board shall proceed to hear and determine the case just as though the accused were present.”
Thereafter, in an October 11, 2010 letter, defendant was informed that his hearing had been rescheduled for November 12, 2010. The certified mail receipt reflects that defendant received this letter on October 16, 2010. On November 12, 2010, in defendant’s absence, the executive board convened, heard testimony | ^regarding the allegations against defendant, and found him guilty on each of the six counts.
On remand, the trial court will be required to determine whether defendant was in fact served with sufficient written specific charges of the provisions of the Constitution which he is alleged to have violated.

*292
Reasonable Time to Prepare a Defense

Courts have determined what constitutes a reasonable time to prepare a defense on a case-by-case basis. See, e.g., Schrader v. Sheet Metal Workers Int’l Ass’n Local Union No. 20, 656 F.Supp. 1487, 1494 (N.D.Ind.1987) (forty-one days reasonable time to prepare a defense); Falcone v. Dantinne, 288 F.Supp. 719, 727 (E.D.Pa.1968), rev’d on other grounds, 420 F.2d 1157 (3d Cir.1969) (twenty-three days reasonable time to prepare a defense); Vars v. Int’l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, 215 F.Supp. 943, 947-48 (D.Conn.1963), aff'd, 320 F.2d 576 (2d Cir.1963) (seventeen days reasonable time to prepare a defense).
In the present case, Article XXIV, Sec. 2 of the Constitution mandates that “trial shall not be held less than ten (10) days from the time the charges are served upon the accused.” Defendant was first informed of the charges against him by letter dated August 31, 2010. Though a certified mail receipt is not included with this letter, the record reflects that defendant responded to this letter on September 7, 2010. Therefore, since defendant learned of the charges against him no later than September 7, 2010, and his disciplinary hearing was held on November 12, 2010, it appears that he had at least sixty-five days to prepare his defense.
On remand, the trial court will be required to determine whether defendant was in fact provided with a reasonable amount of time to prepare a defense to the charges against him.
1 uFull and Fair Hearing
The United States Supreme Court has recognized that a “full and fair hearing,” as mandated by 29 U.S.C. § 411(a)(5)(C), “requires the charging party to provide some evidence at the disciplinary hearing to support the charges made[,]” and that “[t]his is the proper standard of judicial review.”[6] Hardeman, supra, 401 U.S. at 245-46, 91 S.Ct. at 617 (Emphasis added.) Therefore, in determining whether defendant was afforded a “full and fair hearing,” we must consider whether the Union provided “some evidence” at the disciplinary hearing to support the charges against defendant.
The record before us contains only the minutes of the disciplinary hearing held on November 12, 2010. Those minutes reflect that the evidence offered against defendant consisted of testimony from Union members Fredal Riecke and Juan Perez.
According to the minutes, Mr. Riecke testified that on or about August 23, 2010, he, Raul Hernandez, and Luis Hernandez were approached by defendant, who informed them that Brock would be taking over the maintenance contract at Exxon-Mobil, that he was taking the position of superintendent at Brock, and that they too could obtain employment with Brock. Mr. Riecke also testified that he had observed defendant targeting people about working for Brock.
Also according to the minutes, Mr. Perez testified that defendant offered him employment with Brock, that defendant had dispatched Luis Hernandez to speak to other people about working for Brock, and that on August 26, 2010, Luis Hernandez approached him about working for Brock.
11SAfter the testimony of Mr. Riecke and Mr. Perez, the minutes reflect that Mr. *293 Damaris gave a closing statement in which he summarized the charges against defendant. He stated that defendant recruited four mechanics and one apprentice from the Union. He did not identify these five individuals, nor did he present evidence that five members had in fact taken employment with Brock.
Upon our de novo review, we find it troubling that the minutes of defendant’s disciplinary hearing do not identify the five members defendant was convicted of (and fined for) causing to defect to Brock. Other than Mr. Damaris’ assertion in his closing statement that defendant recruited five members for Brock, the record before us does not indicate that evidence was presented at defendant’s disciplinary hearing showing that five members defected to Brock as a result of defendant’s recruiting efforts.
In its brief to this Court, the Union argues that by causing several Union members to defect to Brock, defendant violated subsection (e), which proscribes “[w]ronging a member of the International Association by any acts or acts (other than the expression of views or opinions) causing him physical economic harm.” The Union contends that the secession of the Union members economically harmed the general membership.
Upon review, we find this argument is not supported by the evidence introduced at the disciplinary hearing (as reflected in the minutes of the hearing), which, as noted above, indicates only that defendant approached four members about employment with Brock (¿e., Fredal Riecke, Juan Perez, Raul Hernandez, and Luis Hernandez). The minutes do not reflect that evidence was introduced showing whether any or all of those four members in fact left for Brock. In the absence of such evidence, we find that genuine issues of material fact remain as to whether there was “some evidence” presented at defendant’s disciplinary hearing 116showing that he violated subsection (e) by recruiting five members to defect to Brock.
We also find genuine issues of material fact remain as to whether “some evidence” was presented supporting the charge that defendant violated subsection (i). That subsection proscribes “[m]aking known the business of the International Association or any of its local unions to any employer, employer-supported organization, or other union or organizations, or to the representatives of any of the foregoing.” The Union argues that “the Union’s ‘business’ includes the relative skill of its members and the hiring practices of its hiring hall.” Therefore, the Union contends that defendant made known the Union’s business to Brock when he “handpicked members to defect to Brock, signaling to Brock the members with an acceptable skill level who were likely to defect.”
Even if it is assumed that defendant “handpicked” members for employment at Brock, it is not clear to us from the record how this constitutes a “signal” to Brock of members with an acceptable skill level who were likely to defect. The minutes do not reflect that evidence was presented showing defendant conveyed any information to Brock or a representative thereof. The evidence presented showed only that defendant discussed employment opportunities at Brock with four members. In the absence of evidence that defendant “ma[de] known the business” of the Union “to any employer, employer-supported organization, or other union or organizations, or to the representatives of any of the foregoing,” we find genuine issues of material fact remain as to whether there was “some evidence” presented at defendant’s disciplinary hearing showing he violated subsection (i).
*294 Consequently, where the record before us suggests that defendant was found guilty of two violations without “some” supporting evidence, we find that genuine | ^issues of material fact remain as to whether defendant was afforded a full and fair hearing.[7]
Further, on remand, the trial court will be required to determine whether there was “some evidence” presented at defendant’s disciplinary hearing showing that he violated any of the other noted subsections of the Constitution.
Factor 3 — Reasonableness of Fine
The United States Supreme Court has held that “[i]ssues as to the reasonableness or unreasonableness of [union fines against its members] must be decided upon the basis of the law of contracts, voluntary associations, or such other principles of law as may be applied in a forum competent to adjudicate the issue.” NLRB v. The Boeing Co., 412 U.S. 67, 74, 93 S.Ct. 1952, 1956-57, 36 L.Ed.2d 752 (1973). This Court has found that in determining the reasonableness of fines in this context, the law of conventional obligations applies since the members of a union are bound by the constitution and bylaws of the union, which constitutes the contract between them. Jouandot, 921 So.2d at 1057.
In the instant case, since the sums to be recovered for violations of the Constitution were not set forth in the Constitution (ie., stipulated damages), the Union was required to prove actual damages suffered by it as a result of defendant’s violations. See Jouandot, 921 So.2d at 1058 (citing La. C.C. art. 1995). If the amount of damages is “insusceptible of precise measurement” the amount to be awarded is left to the discretion of the court. Id. (citing La. C.C.1999).
President Pratt explained that the $7,500.00 fine assessed against defendant represented the dues lost from five members who left Eagle for Brock at defendant’s encouragement, as well as the previously paid expenses for the h straining of those members. However, as noted above, the minutes of the disciplinary hearing appears to be devoid of evidence showing that five members left Eagle for Brock as a result of defendant’s solicitation. Since the president’s calculation of the fine was apparently based on an assessment of damages without supporting evidence, we find that genuine issues of material fact remain as to the actual damages sustained by the Union, and therefore, as to the reasonableness of the fine.

AWARD OF ATTORNEY’S FEES

In consideration of our above findings that genuine issues of material fact remain which preclude the granting of summary judgment in this matter at this time, we find that an award of attorney’s fees to the Union is premature at this juncture in the proceedings. Accordingly, we vacate the trial court’s award of attorney’s fees to the Union.

CONCLUSION

Upon our de novo review, we find that genuine issues of material fact remain which preclude the granting of summary judgment in this matter at this time. In light of this conclusion, we correspondingly conclude that the award of attorney’s fees to the Union is premature at this time. Accordingly, for the foregoing reasons, we reverse the trial court’s grant of summary judgment in favor of the Union, vacate the award of attorney’s fees to the Union, and *295 remand the matter to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

. The record reflects that a company is considered a "union company” if it has contractually agreed to hire union members; likewise, a "non-union company” has not contractually agreed to hire union members.

. Portions of Mr. Perez’s and Mr. Riecke’s deposition testimonies were attached as exhibits to the memorandums filed in support of the Union’s and defendant’s cross motions for summary judgment.

. 29 U.S.C. § 411(a)(5) provides:
No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

. Copies of defendant’s personal checks and copies of the Union's ledger reflect that defendant paid his first withdrawal renewal fee of $50.00 in June of 1998 and paid his last withdrawal renewal fee in June of 2010.

. 29 U.S.C. § 412 provides:
Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

. In addition, federal circuit courts have held that the full and fair hearing clause of 29 U.S.C. § 411(a)(5)(C) mandates trial by an “unbiased tribunal.” See Wildberger v. Am. Fed'n of Gov’t Employees, AFL-CIO, 86 F.3d 1188, 1193 (D.C.Cir.1996); Goodman, supra at 783-84.

. On account of our determination that defendant was convicted of charges in the absence of "some" supporting evidence, we pretermit discussion of the bias of the tribunal.