FREDERICKA HOMBERG WICKER, Judge.
12This is a medical malpractice proceeding in which summary judgment was granted in favor of defendant/appellee Ochsner Clinic Foundation. Because plaintiffs/appellants were unable to produce expert testimony showing they can meet their evidentiary burden at trial, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On November 7, 2006, Steven Gonzales saw Dr. Elie Lao at an Ochsner Clinic for treatment of his diabetes. At that appointment, he brought to Dr. Lao’s attention a red, pimple-sized, hard spot in the crease of his elbow. Dr. Lao diagnosed it to be a cyst. On December 8, 2006, Mr. Gonzales had another appointment with Dr. Lao, düring which he showed her the spot again. At this |3point, according to Mr. Gonzales, the spot had grown to the size of a quarter and was interfering with his ability to use his elbow. Dr. Lao again diagnosed it to be a cyst. After that appointment, the lump grew larger, and Mr. Gonzales called Dr. Lao and requested that she remove it.
On December 28, 2006, Dr. Lao performed an in-office procedure to remove the lump. The growth was sent to pathology for analysis and on January 10, 2007, Mr. Gonzales was informed that the growth was Merkel cell carcinoma, a rare and aggressive form of cancer. The tumor was diagnosed as a stage II NO.tumor, meaning the primary lesion was greater than two centimeters and there was no distant metastasis. As a result of the diagnosis, Mr. Gonzales was referred to a surgical oncologist and on January 26, 2007, more of the area around the tumor site was removed. Mr. Gonzales also received radiation therapy.
Subsequently, Mr. Gonzales and his wife, Nancy Gonzales, filed a medical review panel claim under the Louisiana Medical Malpractice Act. The medical review panel (MRP) concluded that Dr. Lao deviated from the standard of care in failing to “document the office surgery and description of the lesion,” but that “this lack of documentation did not cause a delay in diagnosis or harm to” Mr. Gonzales.
After the MRP proceedings concluded, the Gonzaleses timely filed suit against Ochsner Clinic Foundation, alleging that Ochsner was negligent in failing to diagnose the cancer earlier. Plaintiffs claimed that if the cancer had been diagnosed earlier, Mr. Gonzales would have required lqss extensive surgery and would have had a better prognosis. Plaintiffs also alleged that Mrs. Gonzales endured great mental anguish and a loss of consortium as a result of witnessing her husband’s suffering.
LThree years after the filing of the petition, Ochsner filed a motion for summary judgment claiming the Gonzaleses could not prevail at trial because they had not produced the expert testimony necessary to meet the burden of proof in a medical malpractice action. In response, the Gon-zaleses produced expert reports from Dr. Lee A. Fischer and Dr. Gerald Liuzza, and Ochsner agreed to continue the summary judgment hearing without date. Dr. Fischer, a board-certified family practitioner, opined that it was a deviation of the standard of care when Dr. Lao failed to document the office surgery and description of the lesion. Dr. Liuzza, a board-certified forensic pathologist, opined that any extra delay in removing the lesion places Mr. Gonzales at greater risk to develop a recurrence of the cancer in the future.
After taking the depositions of Dr. Fischer and Dr. Liuzza, Ochsner revised *1102 and re-urged its motion for summary judgment on the grounds that plaintiffs could still not offer expert testimony to meet their burden of proof. The motion for summary judgment was heard and granted on May 22, 2013. This matter is now before us on appeal of that judgment.[1]
APPLICABLE LAW
A summary judgment is appropriate when there remains no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. Int’l Ass’n of Heat & Frost Insulators v. Patemostro, 13-1006 (La.App. 5 Cir. 05/28/14), 142 So.3d 284, 287-288; Zeringue v. O’Brien Transp., Inc., 05-760 (La.App. 5 Cir. 4/11/06), 931 So.2d 377, 379, writ denied, 06-1107 (La.9/1/06), 936 So.2d 205. Summary judgments are favored in the law and the rules should be liberally applied. Zeringue, 931 So.2d at 379. The summary judgment procedure shall be construed to accomplish the ends of just, speedy, and inexpensive determination of allowable actions. Id.
Appellate courts review a judgment granting a motion for summary judgment on a de novo basis. Gutierrez v. State Farm Fire & Cas. Ins. Co., 13-341 (La.App. 5 Cir. 10/30/13), 128 So.3d 509, 511. This standard of review requires the appellate court to look at “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits” in making the determination that “there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
According to La. C.C.P. art. 966(C), the burden of proof is on the mover to make a prima facie showing that a motion for summary. judgment should be granted. However, if the movant will not bear the burden of proof at trial, the movant’s burden on the motion does not require the movant to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out the absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. After the movant has met this burden, the burden of proof shifts to the adverse party to present evidence to the court demonstrating that there remains a genuine issue of material fact. There is no genuine issue of material fact if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. MacFadden v. Ochsner Clinic Found., 08-91 (La.App. 5 Cir. 10/28/08), 998 So.2d 161, 164.
In a medical malpractice action, such as the instant case, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the *1103 defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794. Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. La. R.S. 9:2794; Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228. Therefore, unless the case involves some obvious act from which a lay person can infer negligence, such as amputating the wrong limb or leaving a sponge in a patient’s body, the absence of expert testimony as to any of the essential elements of the plaintiffs malpractice claim will preclude the imposition of liability. Samaha v. Rau, 07-1726 (La.2/26/08), 977 So.2d 880; Silvain v. Saer, 09-1103 (La.App. 5 Cir. 10/12/10), 49 So.3d 516.
DISCUSSION
The Gonzaleses’ claims arise from the alleged negligence surrounding the diagnoses of Mr. Gonzales’s Merkel cell carcinoma. Seven weeks passed between the time Mr. Gonzales initially brought the growth to Dr. Lao’s attention and its eventual removal. Had Dr. Lao made the diagnoses sooner, plaintiffs argue, Mr. Gonzales “would have had a better chance for a less extensive surgery” and “he would have had a better prognosis in the future.” Given that this Court reviews |7this case de novo, the ultimate issue is whether summary judgment was appropriate.
This Court uses the same criteria as the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Patemostro, 142 So.3d at 288. Summary judgment is appropriate when all the relevant facts are marshalled before the court, the mar-shalled facts are undisputed, and the only issue is the ultimate conclusion to be drawn from those facts. Id.
Procedurally, the court’s first task on a motion for summary judgment is determining whether the moving party’s supporting documents — pleadings, depositions, answers to interrogatories, admissions and affidavits — are sufficient to resolve all material factual issues. Hence, the initial burden of proof lies with Ochsner. However, because Ochsner has specifically alleged an absence of support for the Gonzaleses’ claims of medical malpractice, La. C.C.P. art 966(C)(2) requires the Gonzaleses to produce factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial. The claim at issue involves the diagnoses of Merkel cell carcinoma, a rare form of cancer. Given the rarity of this disease and the corresponding standard of care associated with its medical diagnoses, this case clearly does not involve some obvious act from which a lay person can infer negligence. See Pfijfner, supra. Thus, as discussed above, the nature of this case dictates that the Gonzaleses were required to produce expert testimony to establish the evidentiary burden of each element of their medical malpractice claim.
For the first two elements, plaintiffs offered the testimony of. Dr. Lee Fischer to establish the standard of care and the fact that it was breached. Dr. Fischer is board-certified in family medicine, and he testified that Dr. Lao breached the |sstandard of care by not recording the office surgery and failing to remove *1104 the tumor earlier.[2] For the third element of causation, plaintiffs offered the testimony of Dr. Gerald Liuzza, a forensic pathologist, to show that Mr. Gonzales sustained harm as a result of the delay of the diagnosis and treatment of his cancer.
In his affidavit, Dr. Liuzza opined that, due to the delay in diagnosis and the removal of the lesion, Mr. Gonzales runs a greater risk of developing a recurrence of the cancer in the future. However, during his subsequent deposition, Dr. Liuzza offered testimony that contradicted his own earlier opinion. Specifically, when asked how he could quantify the increased risk of recurrence Mr. Gonzales faces as a result of the delay, Dr. Liuzza produced an article entitled Epidemiology of Primary Merkel Cell Carcinoma in the United States by Maria Agelli et al. from the Journal of the American Academy of Dermatology.[3]
Dr. Liuzza explained that “what [he] found most useful [about the article was] the graphs concerning survivals over years broken down by ... relative survival by stage and survival by anatomic site.” Of particular note here is Graph B, which shows relative survival rate by stage. According to his testimony, Dr. Liuzza confirmed that Mr. Gonzales’s tumor was a stage II NO tumor (meaning the primary lesion was greater than two centimeters with no distant metastasis). Had it been removed earlier, when it still was the size “of a pimple” and presumably less than two centimeters, Mr. Gonzales’s tumor would have been classified as a stage I NO tumor. However, upon reviewing the article, Dr. Liuzza testified that Graph B makes no distinction between a stage I and stage II NO tumor.[4] Thus, according to | ¡¡the medical literature Dr. Liuzza relied on to support Mr. Gonzales’s contention, and as testified to by Dr. Liuzza, Mr. Gonzales would have the same risk of recurrence had the tumor been removed earlier.
The trial court, in granting defendant’s motion, stated in its reasons for judgment:
Because Dr. Liuzza’s testimony does not support the conclusion that the delayed diagnosis led to a greater risk of harm— and because plaintiffs have produced no other expert testimony to support this conclusion — it is the opinion of this Court that the plaintiffs have not produced sufficient evidentiary support for the third element of their medical malpractice claim. Accordingly, summary judgment is appropriate.
We agree.
On appeal, the Gonzaleses argue that the court erred when it looked beyond Dr. *1105 Liuzza’s affidavit and deposition testimony. By weighing the merits of the medical article Dr. Liuzza used in forming his opinion along with Dr. Liuzza’s actual affidavit and testimony, the Gonzaleses assert that the trial court improperly evaluated the “persuasiveness of competing scientific determinations,” made a credibility determination, and “took over the jury’s job.” Plaintiffs are mistaken. What the trial court did below, as well as what this Court must do here, is evaluate whether the evidence put forth in support of plaintiffs’ position establishes that they will be able to satisfy their evidentiary burden of proof at trial. MacFadden, supra.
In this case, Dr. Liuzza testified to the strength of the medical article upon which he relied and the medical article shows that Mr. Gonzales does not face a hngreater risk due to the alleged delay in the diagnosis and treatment of his Merkel cell carcinoma. Thus, based on plaintiffs’ own expert testimony, Mr. Gonzales does not face a greater risk due to the alleged delay in the diagnosis and treatment of his Merkel cell carcinoma. The trial court was not evaluating the credibility of Dr. Liuzza when it considered his contradictory testimony; Dr. Liuzza changed his opinion when faced with the research upon which he relied on the issue of causation. The trial court assumed that Dr. Liuzza is a credible expert who relied upon valid research. That research, as testified to by Dr. Liuzza in his deposition, establishes that the alleged delay in diagnosis and treatment did not increase the risk to Mr. Gonzales of a re-occurrence of the cancer.
Put another way, Dr. Liuzza essentially changed his mind. As a result, plaintiffs have-not offered any expert testimony to show that Mr. Gonzales sustained harm as a result of the delay of the diagnosis and treatment of his cancer. Therefore, there is no genuine issue of material fact because the adverse party has failed to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. MacFadden, supra.
While plaintiffs argue that causation is an issue for the factfinder, and not appropriate for determination during a motion for summary judgment, and “[wjhile the question of causation is usually an issue for the factfinder’s determination, it is possible to determine this issue on summary judgment if reasonable minds could not differ.” Henderson v. Homer Mem’l Hosp., 40,585 (La.App. 2 Cir. 1/27/06), 920 So.2d 988, 995, writ denied, 06-491 (La.5/5/06), 927 So.2d 316. Here, where there is no issue of a causative link, reasonable minds could not differ.[5]
|nLastly, the Gonzaleses assert that they have suffered great mental distress due to the alleged delay in diagnosis and removal of the tumor and that they can recover damages, despite an absence of physical injury. Louisiana law does not recognize an independent tort of negligent infliction of emotional distress. Bacas v. Falgoust, 99-1312 (La.App. 5 Cir. 05/30/00), 760 So.2d 1279, 1282 (citing Moresi v. Dept. of Wildlife & Fisheries, 567 So.2d 1081 (La.1990)). Recovery for negligent infliction of emotional distress has been limited to those cases involving the “especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious.” Id. *1106 (citing Moresi v. Dept. of Wildlife & Fisheries, 567 So.2d 1081 (La.1990)).
In general, except for the tort of intentional infliction of emotional distress, if a defendant’s conduct is merely negligent and it causes only mental disturbance without a physical consequence, the defendant is not liable for the emotional injury. See Moresi supra. However, exceptions to the general rule have been carved out in cases where there is the “especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious.” Moresi, 567 So.2d at 1096. This Court has found such special circumstances to exist where “ean-cerphobia” develops due to the negligence of the physician and that plaintiffs damages for emotional distress are recoverable. Straughan v. Ahmed, 618 So.2d 1225, 1229 (La.App. 5 Cir.1993). Thus, in order to prove entitlement to damages for negligent infliction of emotional distress, the Gonzaleses must prove that defendant committed malpractice. For reasons discussed above, the Gonzaleses are unable to do so. Therefore, the Gonzaleses’ assertion that they could recover for emotional harm is without merit.
| ^CONCLUSION
Because plaintiffs/appellants did not produce expert testimony on the issue of causation, they have not shown that they can meet their evidentiary burden at trial. Thus, there is no genuine issue of material fact and Ochsner is entitled to judgment as a matter of law. Accordingly, we find that the record supports the trial court decision granting summary judgment in favor of Ochsner. Therefore, we affirm.

AFFIRMED

. On May 22, 2013, Judge Robert Pitre, Jr. rendered a judgment in open court in favor of Ochsner, granting its Motion for Summary Judgment and dismissing, with prejudice, the claims of Steven and Nancy Gonzales. On July 19, 2013, the Judgment granting Ochs-ner’s Motion for Summary Judgment was entered. This Judgment was .signed by Judge Marion Edwards, pro tempore. Plaintiffs timely appealed the aforementioned Judgment, and the parties herein appeared for oral arguments before the Louisiana 5th Circuit Court of Appeal on June 10, 2014. On June 24, 2014, this Court ordered the July 19, 2013 judgment to be vacated because it was not signed by Judge Pitre, thereby making it invalid pursuant to La. C.C.P. art. 1911. See Gonzales v. Ochsner Clinic Found., 14-64 (La.App. 5 Cir. 06/24/14), 145 So.3d 501. The matter was remanded to enable Judge Pitre to render and sign a new judgment. On August 4, 2014, Judge Pitre issued a new judgement granting Ochsner’s motion for summary judgment and dismissing the plaintiff’s claims with prejudice. The Gonzaleses filed another timely petition for appeal on September 29, 2014, which is now before us.

. On the issue of causation, Dr. Fischer also stated that “in general, the longer the delay in diagnosis of and treatment of a tumor, the more the disease will progress.” However, Dr. Fischer admitted that he could not speak to the specific threshold applicable to the alleged delay in diagnosing and treating Mr. Gonzales’s cancer and that he "would defer to a pathologist or oncologist” in this specific circumstance. Although appellants’ maintain that Dr. Fischer's testimony about the effects of delay in diagnosis is enough to show harm, admitting that Dr. Fischer is not a "cancer specialist” they retained another expert, Dr, Liuzza, to address the issue of harm.

. There was a joint stipulation and order to introduce exhibits into the record in the proceedings below. Thus, this article became part of the record on appeal.

.See Deposition of Dr. Liuzza:
Q. So if Mr. Gonzales was a Tl or if Mr. Gonzales was a T2, he would still fall in that circle plot, correct?
A. Correct,
[[Image here]]
Q. But according to this chart which you provided, if the tumor had been excised as a Tl, he would have the exact same risk? A. According to this, they don’t separate Tl from T2. They refer to them both as localized.

. Though not mentioned in their brief, appellants asserted in their original petition that Mr. Gonzales would have undergone a less extensive surgery but for the alleged delay in treatment. However, Mr. Gonzales’s treating physician, surgical oncologist Dr. Ralph Cor-setti, testified that "if [the bump] was still a pimple-sized lesion, it would have been essentially the same operation, [and] the same treatment.”